2004-NMCA-031

86 P.3d 631

**Frederick KING, Plaintiff–Appellee,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant–Appellant.**

No. 23,130.

Court of Appeals of New Mexico.

Jan. 30, 2004.

Certiorari Denied, No. 28,511, March 5, 2004.

David J. Berardinelli, Berardinelli & Associates, Santa Fe, NM, for Appellee.

David W. Frizzell, Simone, Roberts & Weiss, P.A., Albuquerque, NM, Bennett Evan Cooper, Jon T. Neumann, Steptoe & Johnson LLP, Phoenix, AZ, for Appellant.

## OPINION

KENNEDY, Judge.

{1} Allstate Insurance Company (Allstate) petitioned this Court to issue a writ of error to review the trial court's order denying its motion for a protective order. We granted the petition in part to determine whether an order granting or denying a motion for a protective order is a collateral order and subject to review by writ of error. We hold that it is not. However, since we have exercised our discretionary jurisdiction to accept this appeal, we will reach the merits of the issues. We affirm the trial court's decision to deny the protective order requested by Allstate.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} In 1996, Frederick King (Plaintiff) was a passenger in a car that was involved in a collision in Santa Fe County. The complaint alleges that the collision was caused by Eloy Rael, who was insured by Allstate.[1] In addition, the driver of the car in which Plaintiff was a passenger was also insured by Allstate. In 1997, Plaintiff filed suit against Mr. Rael and Allstate. The complaint alleged that

---

1. Mr. Rael died in 2000. Ultimately, a personal representative was substituted and the claim against Mr. Rael was resolved without a trial.

Allstate failed and refused to negotiate a good faith settlement of his claim.

{3} In his amended complaint, Plaintiff alleges that Allstate's claims process was deliberately redesigned in the early 1990's to fraudulently enhance corporate profits through the use of unfair, fraudulent, or deceptive claims handling practices. Plaintiff alleges that among those practices is the use of a process that is designed to put an unfairly low value on claims. Plaintiff specifically alleges that this internal value, which is the maximum amount for which an agent can settle the case, is less than the value Allstate puts on claims in its communications with regulatory agencies. The amended complaint alleges in considerable detail the process used to develop an internal value for each claim and the various tactics used to force claimants to settle for the unfairly low amount. It specifically alleges that as part of this plan, Allstate developed personnel evaluation standards that "reward and advance Allstate employees who aggressively assist and promote Allstate's unlawful scheme." This case concerns the discovery of the Progress Development Summary (PDS) reports used annually by Allstate to evaluate its employees.

{4} In October 2000, Allstate filed a motion for a protective order under Rule 1-026(C) NMRA 2003. The motion asked that Plaintiff be denied discovery of the PDS reports. The motion argued, among other things, that ordering production of personnel files would be an invasion of privacy of Allstate employees. In addition, it asserted that the files were irrelevant, not likely to lead to the discovery of admissible evidence, and were "private, privileged and confidential."

{5} In response, Plaintiff pointed out that what he was seeking in discovery was not the personnel files but the PDS reports of Rita Finley (Ms. Finely) and Hal Palmer (Mr. Palmer), two Allstate employees who handled Plaintiff's claim. Plaintiff explained that the PDS would show, among other things, how the amount paid on claims related to the amount targeted for each claim referred to by the parties as a severity goal. The PDS would also show how much the employee saved Allstate by underpaying or not paying certain claims. Plaintiff argued that Allstate failed to establish good cause for a protective order as required by pointing to a " 'clearly defined and serious injury' " that would be suffered in the absence of the protective order.

{6} Attached to Plaintiff's response was the affidavit of Linda Brown (Ms. Brown). Ms. Brown worked for Allstate from September 1987 until mid-March 1999. Ms. Brown stated that each Market Claim Office (MCO) had severity goals set by Allstate's home office. For part of the time Ms. Brown worked for Allstate, the severity goals were put in writing in the PDS reports. Later, the severity goals were not stated in the PDS reports, but were communicated orally. However, agents were still evaluated on their ability to meet the severity goals set by Allstate's home office. In addition, according to Ms. Brown, the market claim manager (MCM) and the various unit claims managers received reports comparing the monthly and yearly severity figures for each claims representative.

{7} Also attached was the deposition of Carla Kline (Ms. Kline). At the time her deposition was taken, Ms. Kline was working for Allstate as a Frontline Process Expert. Ms. Kline testified that severity goals were communicated to her and to the MCM, and that the MCM received bonuses.

{8} Ultimately, the trial court ruled that Allstate had not shown good cause either for withholding the PDS reports or for the issuance of a protective order restricting the dissemination of the PDS reports. Thus, the trial court ordered Allstate to produce the PDS reports in their entirety without redaction. Allstate did not attempt to appeal this order.

{9} Subsequently, Plaintiff requested and Allstate voluntarily produced the PDS reports of a number of other adjusters and supervisors. In addition, Allstate identified Jose Cornejo (Mr. Cornejo) as the Albuquerque MCM and Ron Bonner (Mr. Bonner) as the Special Investigations Unit (SIU) manager who supervised Mr. Palmer. However, Allstate objected to producing the PDS re-

ports for Mr. Cornejo and Mr. Bonner on the ground that they were not relevant or likely to lead to the discovery of relevant evidence because Mr. Cornejo and Mr. Bonner do not handle individual claims and their compensation is not based on the handling of individual claims.

{10} Plaintiff filed a motion to compel production of the PDS reports for Mr. Bonner and Mr. Cornejo. Plaintiff's motion alleged that, based on materials already received during discovery, the corporate severity goals for each year would be set out in detail in the PDS reports for these managers. In particular, Plaintiff alleged that the discovery material showed that the SIU was treated as a profit center and that the PDS reports would indicate the goals set for referring claims to the SIU. Plaintiff also argued that the relevance objection raised by Allstate must give way to the liberal discovery allowed under the discovery rules.

{11} In response, Allstate again asserted the privacy rights of Mr. Bonner and Mr. Cornejo, as well as its own alleged right of self-critical analysis. In addition, Allstate continued to argue its relevance objection. Ultimately, Allstate moved for a protective order because, in its view, the information was not relevant and was private and confidential. Allstate did not attach a proposed protective order, but requested an order that would limit the use of the PDS reports of Mr. Bonner and Mr. Cornejo to this case and prohibit the dissemination of the PDS reports. Allstate argued that it had shown good cause for a protective order because the PDS reports for Mr. Cornejo and Mr. Bonner were not relevant and because of the strong privacy interest an employee has in his or her personnel file. The trial court ordered Allstate to produce the PDS reports in question and denied Allstate's request for a protective order.

{12} Allstate then petitioned this Court for a writ of error to review the trial court's order. The petition did not mention the proceedings in connection with the PDS reports of Mr. Palmer and Ms. Finley. In a footnote in its petition, Allstate did tell this Court that "Allstate had by oversight produced other employees' PDSs without a pro-

tective order in place." Allstate's summary of proceedings in its brief in chief mentions the proceedings concerning Mr. Palmer and Ms. Finley in passing.

### Pretrial Orders Concerning Discovery Are Not Reviewable under Rule 12–503

■ {13} In *Carrillo v. Rostro*, 114 N.M. 607, 845 P.2d 130 (1992), our Supreme Court adopted the collateral order doctrine announced in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546–47, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and revived the writ of error as the procedural vehicle for the appeal. The Court noted that it was not necessarily adopting the U.S. Supreme Court's interpretation of the doctrine. *Carrillo*, 114 N.M. at 617 n. 9, 845 P.2d at 140 n. 9. In *Carrillo*, the Court indicated that:

> The collateral order doctrine is a narrow exception, whose reach is limited to trial court orders affecting rights that will be irretrievably lost in the absence of an immediate appeal. To fall within the exception, an order must at a minimum satisfy three conditions: [1] It must conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.

*Id.* at 613, 845 P.2d at 136 (internal quotation marks and citations omitted); *see also* Rule 12–503(E)(2) NMRA 2003. Rule 12–503 does not use the phrase "collateral order." However, it adopts the three criteria set out above. Thus, we refer to orders properly reviewable under Rule 12–503 as collateral orders.

{14} Despite the cautionary language in *Carrillo* that New Mexico courts remain free "to apply the doctrine as we deem appropriate," 114 N.M. at 617 n. 9, 845 P.2d at 140 n. 9, Allstate has cited only one New Mexico decision that addresses the collateral order doctrine or refers to review by writ of error. Instead, Allstate has discussed at great length what it represents to be federal law concerning collateral orders. Included in this is a discussion of other federal procedures that, in its view, permit immediate appeal of orders granting or denying protec-

tive orders. We think that ignoring extant state law is less than persuasive on appeal.

{15} Allstate argues that this Court held in *Public Serv. Co.of N.M. v. Lyons,* 2000–NMCA–077, ¶ 9, 129 N.M. 487, 10 P.3d 166, that a discovery order overruling a party's claim that documents are privileged can be reviewed by writ of error. Allstate's reliance on *Lyons* is misplaced. In that case, the parties, unsure of the best way to proceed, filed both an application for interlocutory appeal and a petition for writ of error. The application for interlocutory appeal had already been granted when the petition for writ was filed. Thus, the petition for writ was also granted and the two cases were consolidated. *Id.* The opinion did not address the appropriate way to secure review.

{16} In fact, there are a number of New Mexico decisions that have held that certain orders are or are not collateral orders that can be reviewed by writ of error. In civil cases, only two types of orders have been held to be collateral orders. First, when an individual sues the state or a state agency, the trial court's order denying the state's motion to dismiss based on the lack of a written contract is a collateral order. *Handmaker v. Henney,* 1999–NMSC–043, ¶ 14, 128 N.M. 328, 992 P.2d 879; *Campos de Suenos, Ltd. v. County of Bernalillo,* 2001–NMCA–043, ¶ 9, 130 N.M. 563, 28 P.3d 1104. Second, in a civil rights action, a defendant's motion for summary judgment based on the defense of qualified immunity is a collateral order and can be reviewed by writ of error. *Carrillo,* 114 N.M. at 614–16, 845 P.2d at 137–39; *Chavez v. Bd. of County Comm'rs,* 2001–NMCA–065, ¶ 10, 130 N.M. 753, 31 P.3d 1027; *Sugg v. Albuquerque Pub. Sch. Dist.,* 1999–NMCA–111, ¶ 8, 128 N.M. 1, 988 P.2d 311; *Cockrell v. Bd. of Regents,* 1999–NMCA–073, ¶ 7, 127 N.M. 478, 983 P.2d 427; *see also Doe v. Leach,* 1999–NMCA–117, ¶ 12, 128 N.M. 28, 988 P.2d 1252. In both cases, the immediate review is based on the fact that the immunity in question is an immunity from suit and the burdens imposed by participation in a lawsuit.

{17} In contrast, in an action under the Tort Claims Act, NMSA 1978, § 41–4–1 to –29 (1976, as amended through 2003), an order denying a motion to dismiss based on an argument that the Act does not waive immunity for the suit in question is not a collateral order because the immunity conferred by the Act is an immunity from paying a judgment. *Carmona v. Hagerman Irrigation Co.,* 1998–NMSC–007, ¶ 21 n. 5, 125 N.M. 59, 957 P.2d 44; *Allen v. Bd. of Educ.,* 106 N.M. 673, 675, 748 P.2d 516, 518 (Ct.App.1987).

{18} In fact, this Court has held that an order compelling discovery is not a collateral order. *In re Estate of Pino,* 115 N.M. 759, 761, 858 P.2d 426, 428 (Ct.App.1993). The order challenged in that case required relatives to undergo a blood test in order to determine whether an infant was the child of the deceased. *Id.* This Court observed that it had previously held that orders granting or denying a motion for protective order are ordinarily reviewable only by interlocutory appeal. *Id.* at 760, 858 P.2d at 427; *In re Deposition of Bartow,* 101 N.M. 532, 534, 685 P.2d 387, 389 (Ct.App.1984). In *Estate of Pino,* we held that the order was not a collateral order because there was an effective means of review available before entry of a final judgment in the case. We observed:

> Criminal or civil contempt proceedings are appealable in New Mexico. NMSA 1978, § 39–3–15(A) (Repl.Pamp.1991). If it is the very taking of their blood to which the Pinos object, they could force the issue by refusing to comply with the order and appealing any sanction order. While it could be argued that it is unduly harsh to force people into contempt before hearing their appeal, contempt will act as a useful deterrent, insuring that this Court not be required to hear piecemeal appeals on unimportant issues. The availability of review after criminal contempt is one reason why discovery orders in general are not appealable in federal court.

*Id.* at 761–62, 858 P.2d at 428–29; *see also Corp. Insular de Seguros v. Garcia,* 876 F.2d 254, 258 (1st Cir.1989) (observing that this rule serves the twin goals of minimizing the delay of litigation while preserving a right to appeal erroneous discovery orders).

{19} We reaffirm our holding in *Estate of Pino.* A party who seeks to challenge an order granting a motion to compel discovery

210

or an order denying a request for a protective order with respect to discovery materials can either apply for an interlocutory appeal or refuse to comply, be held in contempt and file an appeal as of right from both the contempt judgment and the underlying discovery order on which the contempt was based.

### Admonitions

■ {20} Plaintiff in this case is represented by David J. Berardinelli of Berardinelli & Associates. Attached to Mr. Berardinelli's answer brief were copies of the PDS reports on other employees that Allstate produced during discovery. However, those documents were not part of the record below. It is improper for a party to attach to its briefs documents that were not part of the record below. *See Jemko, Inc. v. Liaghat,* 106 N.M. 50, 55, 738 P.2d 922, 927 (Ct.App. 1987). On the Court's own motion, the documents are stricken and the Clerk's office is directed to remove them from our files and return them to Mr. Berardinelli.

{21} Allstate was represented by David Frizzell, of Simone, Roberts and Weiss in the trial court. Mr. Frizzell filed the petition for writ of error. Allstate's petition for a writ of error did not mention the proceedings in connection with the PDS reports of Hal Palmer and Rita Finley. Instead, in a footnote in its petition, Allstate told this Court that "Allstate had by oversight produced other employees' PDSs without a protective order in place." In our view, Mr. Frizzell misrepresented the proceedings below.

{22} In addition, the brief in chief was filed by Mr. Frizzell, Bennett Evan Cooper, and Jon T. Neumann of Steptoe and Johnson. It cites only one New Mexico case on protective orders and fails to cite or discuss New Mexico authority on the discovery issues argued. The appellate rules require that New Mexico decisions be cited. *See* Rule 12–213(A)(4) NMRA 2003.

{23} The trial court's order denying Allstate's motion for protective order is af-firmed. The motion for oral argument is denied.

{24} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and CELIA FOY CASTILLO, Judges.