2008-NMCA-104

189 P.3d 711

**Willie CHAVEZ and Mary Ellen Chavez, as personal representatives of the Estate of Anita Chavez, Plaintiffs–Appellees,**

v.

**LOVELACE SANDIA HEALTH SYSTEM, INC., a New Mexico corporation d/b/a Lovelace Health Plan, Defendant–Appellant,**

and

**Dr. J. Jou, Defendant.**

No. 27,425.

Court of Appeals of New Mexico.

June 27, 2008.

Law Offices of James P. Lyle, P.C., James P. Lyle, Albuquerque, NM, for Appellees.

Rodey, Dickason, Sloan, Akin & Robb, P.A., Ellen Thorne Skrak, Edward Ricco, Jocelyn Drennan, Albuquerque, NM, for Appellant.

## OPINION

SUTIN, Chief Judge.

{1} In this medical malpractice action, Defendant Lovelace Sandia Health System, Inc. appeals from a contempt order entered by the district court. We address whether the district court erred in imposing a punitive sanction against Defendant for refusal to comply with a discovery order that required Defendant to produce documents Defendant claimed were immune because they contained information generated and obtained exclusively for peer review purposes. We also address whether the court erred in imposing a punitive sanction against Defendant for seeking interlocutory appellate review through petitions seeking writs in our Supreme Court and in this Court. We hold that the district court erred in entering the contempt order.

## BACKGROUND

### The Start of the Discovery Dispute

{2} Plaintiffs Willie Chavez and Mary Ellen Chavez, as personal representatives of the Estate of Anita Chavez, sued Defendant asserting medical negligence in the placement of a pulmonary artery catheter as decedent was being prepared for heart surgery. Plaintiffs served Defendant with discovery requests to obtain the personnel and credentialing files of supervisor Roger Hirst, M.D.,

an anesthesiologist who was involved in treating the decedent. Defendant objected to producing Dr. Hirst's credentialing file. Another discovery request sought documents from Defendant's investigation into decedent's death. Defendant also objected to this discovery. Plaintiffs filed a motion to compel discovery or to require Defendant to submit a log of withheld documents and to submit those documents for in camera review. Defendant claimed that several documents were immune from discovery under the Review Organization Immunity Act (the ROIA), NMSA 1978, §§ 41–9–1 to –7 (1979). Essentially, the ROIA protects peer review material from discovery, as we discuss in more detail later in this opinion. In regard to peer review material, the parties and the district court considered *Southwest Community Health Services v. Smith,* 107 N.M. 196, 755 P.2d 40 (1988), as the guideline for analyzing the ROIA and the evidentiary burdens placed on the parties when a party claims that documents are immune, confidential peer review material.

{3} Defendant also argued in the district court that certain reports at issue were created pursuant to the federal Health Care Quality Improvement Act of 1986, 42 U.S.C. §§ 11101 to 11152 (1986, as amended through 1989), and that the reports were acquired by Defendant for use in Dr. Hirst's credentialing process. Defendant represents in particular that the documents at issue were responses from the National Practitioner Data Bank to inquiries as to whether any reportable incidents involving Dr. Hirst, such as restrictions on clinical privileges, malpractice judgments, or settlements, were contained in the Data Bank records. Although not significant for our purposes in this appeal, we note that, in addition, Defendant asserted that federal law criminalizes disclosure of the Data Bank reports under the circumstances here. *See* § 11137(b); 45 C.F.R. §§ 60.10, 60.11, 60.13, 60.14 (1989, as amended through 1990).

{4} The foregoing discovery dispute primarily raised issues of the application of the ROIA and of *Smith,* as we discuss further in this opinion.

### The ROIA and *Smith*

{5} Section 41–9–5 of the ROIA pertains particularly to the peer review issue in this case. The statute provides:

All data and information acquired by a review organization in the exercise of its duties and functions shall be held in confidence and shall not be disclosed to anyone except to the extent necessary to carry out one or more of the purposes of the review organization or in a judicial appeal from the action of a review organization. No person described in Section [41–9–4 of the ROIA] shall disclose what transpired at a meeting of a review organization except to the extent necessary to carry out one or more of the purposes of a review organization or in a judicial appeal from the action of a review organization. Information, documents or records otherwise available from original sources shall not be immune from discovery or use in any civil action merely because they were presented during proceedings of a review organization, nor shall any person who testified before a review organization or who is a member of a review organization be prevented from testifying as to matters within his knowledge, but a witness cannot be asked about opinions formed by him as a result of the review organization's hearings.

{6} In *Smith,* our Supreme Court stated that "[t]he ROIA establishes a medical peer review process to promote the improvement of health care in New Mexico. Further, it recognizes that candor and objectivity in the critical evaluation of medical professionals by medical professionals is necessary for the efficacy of the review process." *Smith,* 107 N.M. at 198, 755 P.2d at 42. The Court recognized Section 41–9–5 as "an exercise of the [L]egislature's constitutional authority to enact laws to preserve public health and safety." *Smith,* 107 N.M. at 198, 755 P.2d at 42. "[I]n the sense that records from the peer review process are excluded from evidence" under Section 41–9–5, "the confidentiality provision establishes an immunity from discovery." *Smith,* 107 N.M. at 199, 755 P.2d at 43.

{7} Based on its analysis of Section 41–9–5 as a statute whose confidentiality provision was "intended to prevent disclosure in situations extending far beyond the production of evidence in civil litigation," the Court in *Smith* concluded that the statute did "not purport to create an evidentiary privilege in civil litigation." *Smith,* 107 N.M. at 199, 755 P.2d at 43. Nevertheless, the Court was met with the difficulty of having to balance the legislative function of promoting the health and welfare of society against an overbroad implementation of confidentiality to the extent it might impinge on the right of litigants to obtain and present relevant and material evidence. *Id.* at 200, 755 P.2d at 44.

{8} To balance the foregoing competing interests of the legislative and judicial branches, the Court in *Smith* set up a process to be guided by the exercise of judicial discretion. *Id.* at 200, 201, 755 P.2d at 44, 45. It is this process that is at the heart of the present dispute. First, the Court plainly held "that all data and information acquired by a review organization in the exercise of its duties and functions, and opinions formed as a result of the review organization's hearings, shall be governed by Section 41–9–5." *Id.* at 200, 755 P.2d at 44. Then the Court established burdens on parties in a discovery dispute over the production of documents claimed to be immune under the ROIA. We set out those burdens here. First, the party invoking the statute must

prove that the data or information was generated exclusively for peer review and for no other purpose, and that opinions were formed exclusively as a result of peer review deliberations. If the evidence was neither generated nor formed exclusively for or as a result of peer review, it shall not be immune from discovery unless it is shown to be otherwise available by the exercise of reasonable diligence.

*Id.* Commensurate with the objection to the discovery, the party seeking to compel discovery has the "initial burden of proving relevance to the subject matter." *Id.* This will require an in camera examination of the information "and, perhaps, an evidentiary hearing to determine whether it properly falls within the parameters of Section 41–9–5." *Id.* Second, also part and parcel of the process, if the court rules that the informa-

tion is confidential the party seeking to compel discovery

must then satisfy the trial court that the information constitutes evidence which is critical to the cause of action or defense. If the trial court determines that the success or failure of a litigant's cause of action or defense would likely turn on the evidence adjudged to fall within the scope of Section 41–9–5, then the trial court shall compel production of such evidence.

*Id.* at 200–01, 755 P.2d at 44–45. The Court in *Smith* clearly contemplated an in camera inspection and, if need be, an evidentiary hearing to iron out the parties' burdens and whether particular documents are immune from discovery. We will explore this further later in our discussion of the parties' arguments.

**Defendant's Document Logs and Indices, and Affidavit Regarding Nature of Documents; In Camera Review**

{9} Defendant provided logs of credentialing and quality management documents it claimed were immune. Defendant also provided an affidavit of its former director of quality, Jan Grosse, in support of its position that the documents were protected peer review materials under ROIA that had been generated exclusively for peer review purposes. In the affidavit, Ms. Grosse stated that credentialing files contained "data and information acquired in the exercise of [Defendant's] duties and functions of a review organization," were "generated exclusively to ensure the competence of the medical staff," and were "compiled as part of [Defendant's] internal peer review process." She further stated that Defendant's internal peer review was a process to "monitor and review the performance and qualifications of medical staff" for the purpose of recommending whether any staff member's hospital privileges should be limited, suspended, or revoked, and that such peer review material was confidential. Ms. Grosse explained that Defendant was not willing, without a court order, to produce credentialing information from Dr. Hirst's credentialing file based on Defendant's policy and the ROIA. She stated that providing the information sought by Plaintiffs would violate the ROIA and would

subject Defendant's employees to criminal penalties.

{10} In addressing quality management documents, Ms. Grosse explained that the documents were "case-specific documents generated exclusively for review of the quality of care of [Defendant]," and that the production of these documents in medical negligence cases would provide a disincentive to continuing the peer review process. She closed her discussion by stating that "[t]he Anesthesiology Department reviewed [decedent's] case with an eye to how the quality of care could be improved," that "[t]he exclusive purpose for such reviews is quality assurance and improvement," and that "[b]ecause of [Defendant's] commitment to maintaining the confidentiality of peer review such as these documents and because of the [ROIA], these documents will not be produced."

{11} At the hearing on Plaintiffs' motion to compel discovery as contemplated in *Smith* the court required that certain documents be submitted for in camera inspection. Defendant submitted twenty pages of documents for in camera review, along with an index of the documents.

**The Court's Discovery Order Requiring Defendant to Produce Documents**

{12} Following its in camera review, the court ordered (the discovery order) that just over half of the documents were "discoverable" and were to be provided by Defendant to Plaintiffs. The discovery order covered the following specific documents: (1) a Department of Anesthesiology QA/Q1 Report; (2) a Peer Review Program Quality Management Worksheet; (3) an electronic communication from Dorie Skidmore on "follow up of action plan"; and (4), (5), (6) three Data Bank reports contained in Dr. Hirst's credentialing file. Items (1), (2), and (3), the quality management file documents, primarily include a description of the circumstances surrounding the decedent's death. Items (4), (5), and (6), the Data Bank documents, were responses from the Data Bank to inquiries from Defendant as to any reportable incidents involving Dr. Hirst that were contained

in the Data Bank records. All of these documents were placed under seal.

{13} Our review of the QA/Q1 Report (item (1)) shows a factual description of the circumstances surrounding the decedent's death and statements relating to causation and risk that are of little consequence in regard to liability. It also sets out a next step to be taken with the surgeon. The Quality Management Worksheet (item (2)) shows the same factual description as that contained in the QA/Q1 Report and adds an entry reflecting a discussion relating to whether further inquiry was needed, as well as an electronic communication relating to whether further discussion had taken place within the Department of Anesthesiology. The Dorie Skidmore electronic communication (item (3)) relates to whether any action occurred and indicates that no significant action occurred following what was stated in the Quality Management Worksheet. The three Data Bank documents (items (4), (5), and (6)) appear to us to contain nothing of any use to Plaintiffs or of any notable significance for peer review purposes. Other documents in the in camera envelope contain brief, favorable comments, in regard to Dr. Hirst's competence, although one document appears to rate Dr. Hirst's performance generally, but without any stated negative conclusions or explanations of the meaning of the ratings. It does not appear to us that these other documents are at issue on appeal.

**Defendant's Unsuccessful Attempts to Obtain Interlocutory Appellate Review and Refusal to Comply with the Discovery Order, Which Led to the Court's Contempt Order**

{14} The district court denied Defendant's request for an interlocutory appeal and a stay of the discovery order. Defendant then sought relief from the discovery order by filing a petition in our Supreme Court for a writ of superintending control and a stay, as well as a petition for writ of error in this Court. Plaintiffs followed with a motion for contempt sanctions in the district court, asserting bad faith on Defendant's part and "flagrant disregard for established New Mexico case law" in seeking writs in the Supreme Court and Court of Appeals in an "attempt to escape its obligation to comply with" the discovery order. Defendant's petitions were denied, and Defendant did not comply with the court's discovery order, whereupon the district court entertained Plaintiffs' motion for a contempt order.

{15} At the hearing on Plaintiffs' motion for contempt order, Defendant argued that it acted under a good faith belief that the standards for discovery of peer review material set forth in *Smith* were not properly applied by the district court and that seeking relief through writ proceedings was appropriate. Defendant also argued that disclosing the peer review materials before obtaining appellate review would irreparably harm the medical peer review system. The court entered a contempt order (the contempt order), which rejected Defendant's arguments and stated that the documents the court ordered produced were "innocuous and routine." The court also indicated that it "did not order production of any documents that were marked as peer review forms" and stated that Defendant "did not have a good faith basis for filing writ petitions[ ] in light of *King v. Allstate Insurance Co.*, 2004-NMCA-031, 135 N.M. 206, 86 P.3d 631."

{16} The court held Defendant in contempt and ordered Defendant to reimburse Plaintiffs' counsel's attorney fees and tax of about $20,000 and to pay a punitive sanction of $2000 into the registry of the court. Defendant paid the fees and tax, and deposited $2000 into the registry of the court, but reserved its right to seek restitution were this Court on appeal to reverse the discovery and contempt orders. Defendant then filed the present appeal from the contempt order.

**Settlement of the Merits During Present Appeal, but Continued Pursuit of Relief From Contempt Order by Defendant**

{17} During the pendency of the present appeal, the parties settled the underlying medical malpractice case. Pursuant to the settlement, Plaintiffs were entitled to retain the attorney fees awarded to them by the district court regardless of whether Defendant prevailed in this appeal. The settlement also provided that should Plaintiffs pre-

vail in this appeal, Plaintiffs would not seek production of the documents to which the disputed discovery ruling pertains. However, the parties agreed that the $2000 paid into the court registry was not affected by the settlement and was to remain at issue in this appeal, that Defendant still sought a disposition of the appeal pursuant to which it would be entitled to restitution of the sum paid to the registry, and that "in the circumstances, a justiciable controversy continues to exist and the appeal can and should go forward despite the settlement of the underlying case." Based on the parties' settlement, the issue of whether Defendant must produce documents is now moot. Also moot is whether Defendant is entitled to the return of the compensatory sanction amount already paid to Plaintiffs. Defendant seeks only to set aside the $2000 punitive sanction and to have that sum returned.

## DISCUSSION

### I. Clarification of the Appellate Issues

{18} The district court entered its contempt order for two reasons: Defendant's "failure to comply with the [discovery] order and the additional time spent as a result of [Defendant's] recourse to writ proceedings." The court stated that its purpose was "to punish [Defendant] and to deter [Defendant] and others who may be so inclined from acting similarly in the future." The court rejected Defendant's rationale for refusing to comply with the discovery order and then seeking the writs, which was that disclosure of the documents before obtaining appellate review "would irreparably harm the medical peer review system." In determining that Defendant did not have a good faith basis for filing writ petitions, the court relied on *King*, reading *King* to give a party who challenges an order compelling discovery of peer review documents no procedural option other than to "apply for an interlocutory appeal or refuse to comply, be held in contempt and file an appeal as of right from both the contempt judgment and the underlying discovery order on which the contempt was based." 2004–NMCA–031, ¶ 19.

{19} In its brief in chief in the present appeal, Defendant's sole point for reversal is that the district court abused its discretion in entering its discovery order. The primary ground for this point is that the court did not exercise its discretion in conformity with the procedures required in *Smith*. A second ground is that even if the court thought it was complying with the *Smith* requirements, the discovery order nevertheless constituted an abuse of discretion because neither relevancy nor criticality, essential aspects of the *Smith* analysis, were established.

{20} In their answer brief, Plaintiffs note that the district court also grounded its contempt order on Defendant's lack of a good faith basis for filing the petitions for writs. Plaintiffs then also note that Defendant's brief in chief does not challenge the contempt order insofar as that order was based on lack of good faith. Thus, Plaintiffs argue that, because Defendant does not raise or argue the lack of good faith aspect of the court's ruling in its brief in chief, the issue of imposition of sanctions on that ground could not be considered by this Court on appeal. For that argument, Plaintiffs cite *Hale v. Basin Motor Co.*, 110 N.M. 314, 321, 795 P.2d 1006, 1013 (1990), which declined to address an issue that was raised by the appellant because it was raised for the first time in the reply brief. Plaintiffs then argue that the imposition of sanctions was "justified on independent and equally compelling grounds," which we understand to mean that even if the discovery order were improper, the contempt order must stand because it is supported under the district court's lack of good faith rationale.

{21} In its reply brief, Defendant responds by arguing that the contempt order cannot stand if the discovery order is reversed because the sanction included compensation to Plaintiffs for fees incurred in obtaining the discovery order as well as in opposing the writs. In addition, Defendant argues that "the district court's rationale for imposing sanctions commingles [Defendant's] discovery noncompliance and its recourse to writ proceedings in an effort to obtain judicial review[,]" arguing further that Defendant's "appeal inherently challenges both grounds." To support its right to argue these points, Defendant cites *Brashear v. Baker Packers*, 118 N.M. 581, 582, 883 P.2d 1278, 1279

(1994), which held that the appellant was not attempting to raise an issue on appeal for the first time when it was only attempting to rebut an argument raised in the answer brief. Interpreting Rule 12–213(C) NMRA as it read at the time, our Supreme Court stated that the "rule expressly allows the appellant to address in its reply brief arguments not addressed in its brief in chief but asserted in the appellee's answer brief." *Brashear*, 118 N.M. at 583, 883 P.2d at 1280.

{22} We need not analyze here the specific circumstances in *Hale* and *Brashear*, although it would appear that the alternative treatments of the issue by the two cases may be in need of reconciliation. Nor do we find it necessary to attempt to construe Rule 12–213(C) which, in focusing on reply briefs, permits an appellant to file a brief in reply to an answer brief and commands that the brief reply only to arguments or authorities presented in the answer brief. We determine that it is appropriate under the circumstances of this case to address the propriety of the contempt order in all respects. To address only one ground for the court's contempt order and not the other leaves the propriety of the order only half decided and our review only partially effective. We therefore address the validity of the contempt order by looking at both the propriety of the discovery order and the propriety of the punitive sanction for seeking writs in the Supreme Court and in this Court.

{23} In its contempt order, the court expressly rejected Defendant's arguments that it acted under a good faith belief that the court did not properly apply the *Smith* standards, that review through writ proceedings was its proper procedural course marked out in *Smith*, and that disclosure of the documents would irreparably harm the medical peer review system. In rejecting these asserted justifications, the court stated in the contempt order that the documents the court ordered produced were "innocuous and routine"; that the court "did not order production of any documents that were marked as peer review forms"; and that, in light of *King*, Defendant "did not have a good faith basis for filing writ petitions." In the hearing on the motion for contempt order, the district court verbally stated that there could be no honestly or justifiably held difference of opinion as to whether *King* foreclosed the writ procedures under the circumstances. Further, the court, in its written contempt order, wanted it made clear that it was punishing Defendant so that others who may be inclined to act similarly would be deterred from doing so.

{24} As we explain more fully later in this opinion, we cannot agree with the district court's conclusion that Defendant was subject to the punitive sanction. We first address the discovery order and conclude that it was error to enter the order. We then address the issue of Defendant's having sought relief through petitions in the Supreme Court and in this Court, and we conclude that it was error to sanction Defendant for seeking the writs.

## II.  Standard of Review

{25} We review a district court's order compelling discovery for abuse of discretion. *Pincheira v. Allstate Ins. Co.*, 2007–NMCA–094, ¶ 27, 142 N.M. 283, 164 P.3d 982, *cert. granted*, 2007–NMCERT–007, 142 N.M. 330, 165 P.3d 327. Likewise, we review a contempt order for abuse of discretion. *See Case v. State*, 103 N.M. 501, 503, 709 P.2d 670, 672 (1985); *Miller v. City of Albuquerque*, 88 N.M. 324, 328–29, 540 P.2d 254, 258–59 (Ct.App.1975) (holding that the district court did not abuse its discretion in entering a contempt order but did abuse its discretion in entering a punitive attorney fee order without authorization to do so). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Rojo*, 1999–NMSC–001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). A trial court abuses its discretion when it exercises its discretion based on a misunderstanding of the law. *See State v. Elinski*, 1997–NMCA–117, ¶ 8, 124 N.M. 261, 948 P.2d 1209. "[E]ven when we review for an abuse of discretion, our review of the application of the law to the facts is conducted de novo. Accordingly, we may characterize as an abuse of discretion a discretionary decision that is premised on a

misapprehension of the law." *N.M. Right to Choose/NARAL v. Johnson,* 1999–NMSC–028, ¶ 7, 127 N.M. 654, 986 P.2d 450 (alteration omitted) (internal quotation marks and citations omitted).

### III. The District Court Erred in Sanctioning Defendant for Refusal to Comply With the Discovery Order

{26} In deciding the propriety of the discovery order, we first set out the opening sentence of Section 41–9–5, which, in no uncertain terms, states:

> All data and information acquired by a review organization in the exercise of its duties and functions *shall* be held in confidence and *shall not be disclosed* to anyone except to the extent necessary to carry out one or more of the purposes of the review organization or in a judicial appeal from the action of a review organization.

(Emphasis added.) The unchallenged Grosse affidavit stated that the data and information contained in the documents at issue were "acquired by a review organization in the exercise of its duties and functions." § 41–9–5. Thus, the Grosse affidavit showed that the documents at issue were covered under the language of Section 41–9–5 and not to be disclosed except to the extent necessary to carry out purposes of Defendant's peer review process.

{27} The purpose of the ROIA is to encourage peer review, which includes the necessary ingredients of honesty and candor in the process of attempting to understand why mistakes occur in medical procedures, in order to improve the quality of care. Statements made may be those of medical personnel who were involved in a particular incident. Those statements may shed light on whether a mistake was made and may constitute opinion on those matters. Statements may also be those of personnel who may be evaluating another's competence. There of course may be other data or information that reflect on the competence and skill of a particular physician.

{28} In *Smith,* our Supreme Court was concerned about the balancing of interests, and the Court attempted to make Section 41–9–5 workable by setting out a process by which to evaluate those interests. *Smith,* 107 N.M. at 200, 755 P.2d at 44. In the present case, Defendant wanted the district court to side with protection, and Plaintiffs wanted the court to side with production, while the court was apparently convinced that the documents neither helped Plaintiffs nor harmed Defendant on the issue of liability. We can appreciate a district court's difficulty in making a decision about whether to order production or protection of documents that, while relevant, will not likely have any significant application to or use in the case and that appear to contain data and information that would likely be obtained from routinely discoverable documents. In balancing interests, however, we read *Smith* to create and require a process that sides with protection instead of production when such documents contain "data or information … generated exclusively for peer review and for no other purpose, and [when] opinions were formed exclusively as a result of peer review deliberations," *Smith,* 107 N.M. at 200, 755 P.2d at 44, unless the party seeking the documents can satisfy his or her criticality burden. The balancing process placed burdens on the parties. The most important burdens are two: (1) proof by the party objecting to production that "the data or information was generated exclusively for peer review and for no other purpose, and that opinions were formed exclusively as a result of peer review deliberations[,]" and (2) a showing by the party seeking the documents, to the satisfaction of the court, "that the information constitutes evidence which is critical to the cause of action or defense." *Id.* at 200–01, 755 P.2d at 44–45.

{29} With burdens on the parties come burdens on the district court. District courts are to determine the extent to which the parties have fulfilled their separate burdens. Because Section 41–9–5 and *Smith* appear to forbid the party seeking discovery from seeing the content of the documents, it is up to the district court to conduct in camera proceedings to review content. As we read *Smith,* those proceedings might in some circumstances include the questioning of witnesses under oath with official report-

ing of the testimony. *See Smith*, 107 N.M. at 200, 755 P.2d at 44 ("The procedure will entail the trial court's *in camera* examination of the information and, perhaps, an evidentiary hearing to determine whether [the information] properly falls within the parameters of Section 41–9–5 as announced by the Court today."). For effective appellate review, it is incumbent upon the district court to enter findings and conclusions related to whether, under Section 41–9–5, the documents are immune from discovery.

{30} Defendant complains that the court conducted no *Smith* analysis whatsoever after Defendant satisfied its exclusivity burden by showing, through Ms. Grosse's affidavit, that the documents constituted medical peer review material generated exclusively for quality assurance and improvement purposes. In addition, Defendant argues that Plaintiffs made no showing of relevance and failed to satisfy the criticality burden by showing that the material was critical to showing the merits of their claims, each a required element under *Smith*. To drive these points home, Defendant asserts that the court simply viewed the documents as "innocuous and routine," without mentioning anything in regard to relevance or criticality.

{31} In addition, Defendant argues that even had the district court believed it followed the *Smith* analysis, the material could not be characterized as relevant to a medical malpractice claim since medical negligence is evaluated from the standpoint of reasonableness of a physician's actions at the time of care and not from a retrospective review undertaken for quality purposes or based on whether the facility adequately screened a physician's competencies. Further, Defendant argues that Plaintiffs could not claim criticality without first engaging in sufficient discovery to make a showing that there is a need, under the heightened criticality standard in *Smith*, for peer review documents. On the issue of criticality, Defendant again points to the court's view that the documents were "innocuous," a view, according to Defendant, that would indicate that the documents were not critical to Plaintiffs' claims.

{32} Plaintiffs contend that they cannot know the relevance of documents without first having the opportunity to view them, although to Plaintiffs, because the documents related either to the incident in question or Dr. Hirst's training, education, and experience, the documents were obviously relevant. Similarly, Plaintiffs argue that they were not in a position to show criticality without first having the opportunity to examine the documents. Furthermore, Plaintiffs argue for the same reason that they were unable to challenge Defendant's contention that the documents exclusively contained peer review data or information. Thus, Plaintiffs argue, the evaluation in this case of the competing interests and the determination of discoverability were properly and necessarily left to the sole and sound discretion of the district court based on the evidence before it.

{33} We see nothing in the record to indicate that the district court carried out the analyses as required in *Smith*. The sole finding expressed in the record was contained in the contempt order stating that the documents were innocuous and routine. This finding falls short of a finding that Defendant failed to satisfy its exclusivity burden or that Plaintiffs satisfied their criticality burden. For these reasons and the reasons that follow, we hold that the court erred in entering its discovery order. We first examine how the district court viewed the nature of the documents at issue, addressing the exclusivity issue and then turning to the issue of criticality.

## A. The Nature of the Documents: The Exclusivity Issue

{34} What obviously troubled the district court in this case is that it does not appear that the documents played any particularly useful role in peer review. The few documents at issue do not contain any opinions or recommendations bearing on quality control or Dr. Hirst's competence. Nevertheless, Defendant presented unchallenged statements in the Grosse affidavit that the documents contained "data or information ... generated exclusively for peer review and for no other purpose, and that opinions were formed exclusively as a result of peer review deliberations." *Smith*, 107 N.M. at 200, 755 P.2d at 44. The court made no express

finding contrary to what was presented in the Grosse affidavit, and our review of the record does not lead us to a contrary conclusion. Believing that it satisfied its burden under *Smith*, and guided by *King*, Defendant suffered a contempt citation in order to prevent unwarranted incursions into ROIA immunity. *See King*, 2004-NMCA-031, ¶ 19 (leaving as options for relief either applying for an interlocutory appeal or refusing to comply and being held in contempt followed by an appeal).

{35} The only finding regarding the nature of the documents that we can locate in the record appears in the contempt order, where the court described the documents as innocuous and routine. This finding is ambiguous. Left for conjecture in using the word innocuous is whether the court meant that the documents could not harm Defendant on the issue of liability, meant that the documents were not critical to Plaintiffs' case, or meant that the data and information in the documents did not contain any opinions or recommendations relating to quality control or to physician competence. Also left for conjecture is what the use of the word "routine" was intended to convey. We would guess that, by "routine," the court intended to convey that the documents contained data and information that was no different than that which was routinely discoverable from hospital notes and reports. Whatever was in the court's mind, we conclude that the court's only view of the nature of the documents is not helpful in resolution of the issues before us. It is the analysis set out in *Smith* to which the district court should adhere, along with providing findings that permit effective review.

{36} In sum, the court failed to make an exclusivity determination as required by *Smith*. The court's finding that the documents were innocuous and routine is insufficient to support a failure on Defendant's part to satisfy its exclusivity burden. For this reason, the discovery order cannot stand.

{37} We think it is important on the question of the nature of the documents to add the following. As we have indicated, Defendant's appeal was premised on the fact that the district court did not do an analysis

with findings and determinations as required under *Smith* and, therefore, the discovery order was erroneously entered because the documents must be considered immune under the ROIA. Plaintiffs answered Defendant's appeal without showing in the record that the district court actually analyzed the burdens pursuant to the *Smith* requirements and, based on the lack of such an analysis, determined that the documents were not immune under the ROIA standard. Based on a statement made by Plaintiffs' counsel during oral argument in this appeal that in the record of the contempt hearing the court ordered that the documents were not peer review documents, this Court requested counsel to point out where, in the record, the district court determined that the documents it ordered produced were not peer review documents covered under the ROIA. Counsel was not able to point that out, and he requested permission to provide a cite to the record if he was able to locate it. We granted that permission. Counsel has not provided any such record citation. In a response a few days later, counsel submitted to this Court a copy of a letter dated June 2, 2006, written by the district court to counsel relating to the court's in camera review of documents. The letter stated that the court had determined that the documents in question were not "privileged and, therefore, are discoverable," which Plaintiffs' counsel "interpreted ... as a finding that the documents were not created exclusively for peer review purposes." Counsel did not represent that this letter was in the record before this Court, and counsel has not requested that we make the letter a part of the record on appeal. *See Santa Fe Exploration Co. v. Oil Conservation Comm'n*, 114 N.M. 103, 108, 835 P.2d 819, 824 (1992) (stating that where a party fails to cite any portion of the record to support its factual allegations, the appellate court need not consider its argument on appeal); *State v. Reynolds*, 111 N.M. 263, 267, 804 P.2d 1082, 1086 (Ct.App.1990) ("Matters outside the record present no issue for review."). We have chosen not to consider the letter for several reasons. The letter is not a part of the record on appeal. Also, what is stated in the letter did not appear in the

discovery order. In addition, the letter does not indicate that the court applied the *Smith* requirements. Further, the briefs on appeal approached the issue here as though the documents were peer review documents but were ordered produced because they were innocuous and routine. Moreover, even were we to consider the letter, we would not be persuaded to affirm. We think it imperative for effective review that in ROIA cases the district court analyze the *Smith* requirements and enter findings and conclusions with respect to the extent to which the parties have satisfied their burdens as set out in *Smith.* Finally, in their answer brief, Plaintiffs do not cite and refer to what occurred in the hearing that resulted in the discovery order, and they cite and refer only once to what occurred in the hearing that resulted in the contempt order. As to this latter hearing, Plaintiffs cited only generally to forty-nine minutes of discussion, with no specificity to any particular discussions to support a statement in their answer brief that the court noted that the documents which were ordered produced were not peer review materials. While we are not obligated to search the record to find support for a party's argument, *In re Estate of Heeter,* 113 N.M. 691, 694, 831 P.2d 990, 993 (Ct.App.1992), we did review the entire portion of the hearing to which Plaintiffs generally cite, and we found no statement of the court that the documents were not peer review documents or were not acquired, created, or generated exclusively for peer review purposes.

**B. The Nature of the Documents: The Criticality Issue**

{38} In addition to lacking a basis grounded in an exclusivity analysis, the discovery order must also fail because it lacks a basis grounded in a criticality analysis. Although there exists little question as to whether the documents were relevant, in that they pertain to the incident or to Dr. Hirst's credentialing, competence, or experience, it is difficult to see how a district court could determine that any document was critical to Plaintiffs' claims in this case. *See Smith,* 107 N.M. at 200–01, 755 P.2d at 44–45 (stating that the court must be satisfied that the information at issue constitutes evidence which is critical to the cause of action). It is highly doubtful that the recitations in these documents reflect anything more than what Plaintiffs would learn from discoverable hospital records and discoverable records from Dr. Hirst's personnel file. Plaintiffs actually concede that none of the documents can be considered harmful to Defendant on the issue of liability. It is therefore clear that the documents would not have been critical to Plaintiffs on any aspect of their cause of action. Plaintiffs therefore did not satisfy their criticality burden under *Smith,* and for this reason, as well, the discovery order cannot stand.

**IV. The Court Erred in Sanctioning Defendant for Engaging in the Writ Petition Process**

{39} The procedure used in *Smith* to obtain relief was a petition for a writ of superintending control filed in the Supreme Court. We do not believe that it is our prerogative or that of the district court to limit, through a sanction process, a litigant's right to seek a writ of superintending control in our Supreme Court. To the extent the district court determined that *King* forecloses or is intended to foreclose that procedure, we cannot agree. As for filing a petition for a writ of error in this Court to seek relief from a discovery order, we do not read *King* to say or imply that under no circumstance in this Court can a party successfully seek a writ of error from a discovery order. At the time that Defendant sought a writ of error in this Court, there had been no decision in this Court or our Supreme Court addressing whether a party was foreclosed from seeking a writ of error from a discovery order in a medical peer review case under the ROIA. The precise issue in this case had not been adjudicated.

{40} Just as it is not our place to determine whether a petition for a writ of superintending control was improvidently filed in the Supreme Court or to punitively sanction a party for having done so, we question whether it was the place of the district court in the present case to determine whether the petition for writ of error was

improvidently filed or to punitively sanction Defendant for having sought the writ of error. Our appellate rules permit a damages award pursuant to NMSA 1978, § 39–3–27 (1966), "if it is determined that the appeal is frivolous, not in good faith, or merely for purposes of delay, if requested in the briefs or by motion filed within ten (10) days of entry of disposition[.]" Rule 12–403(B)(4) NMRA; *see also Durrett v. Petritsis*, 82 N.M. 1, 4, 474 P.2d 487, 490 (1970) (holding, on a petition for damages for taking an appeal alleged to have been taken solely for the purpose of delay and to cause further expense, that "[a]lthough we have found the appeal to lack merit, it does not follow that it was not in good faith"); *Anderson v. Jenkins Constr. Co.*, 83 N.M. 47, 49, 487 P.2d 1352, 1354 (Ct.App.1971) (holding that no statutes or rules created a penalty the Court of Appeals could impose for delays in the lower court, and that whether the appeal was taken for the purpose of delay and resulted in delay depended "upon whether the appeal was frivolous, vexatious and groundless, and not taken in good faith"). Courts normally do not have authority to remedy misconduct that occurs in other courts. *See State v. Ngo*, 2001–NMCA–041, ¶ 25, 130 N.M. 515, 27 P.3d 1002 ("[B]ecause each judge has inherent power to control his or her own courtroom, then it follows that when judges of the same judicial district hold coordinate positions, one judge cannot infringe on another judge's power to control his or her own courtroom.").

■ {41} Assuming, without deciding, that a district court might have a sanction power under limited circumstances for a party's conduct in pursuing appellate review on an issue covered by controlling precedent, such a sanction, if permissible at all, should be imposed only in the rare case in which the court expressly determines that the procedure was wholly without lawful basis or, although perhaps having colorable justification, if the procedure was done solely for the purpose of delay. *Cf.* Rule 1–011 ("The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information and belief there is good ground to support it; and that it is not interposed

for delay."); *Miller v. Conn. Gen. Life Ins. Co.*, 84 N.M. 321, 322, 502 P.2d 1011, 1012 (Ct.App.1972) ("[D]oubts as to the frivolous nature of an appeal will be resolved in favor of the appellant."). One cannot begin to count the number of cases this Court sees in which a party and its counsel ask this Court to revisit and modify or distinguish what the opposing party contends is controlling precedent. The court's use of a punitive sanction in this case to deter all lawyers from recommending to their clients to seek review by writ of error in this Court, or from pursuing a writ at their clients' direction, in our view has an unwarranted chilling consequence potentially inimical to our adversary process.

{42} On the point of delay, we think it noteworthy that it is difficult to see how delay could have been an issue in the present case. No stay of the discovery order was obtained in any court, and nothing prevented the district court from immediately proceeding to hold Defendant in contempt for noncompliance with the discovery order. Further, the time involved in the writ process appears to have not been more than approximately two and a half months from beginning to end, and we question whether that period of time can be considered excessive delay, even were delay to have been a factor in the court's sanction consideration. Moreover, substantial evidence does not support a finding of lack of good faith. The district court did not find, and Plaintiffs have not persuaded us that there were any actions of Defendant, beyond what we have discussed in this opinion, that indicate that Defendant sought the writs solely for the purpose of delay or for another clearly inappropriate and inexcusable purpose.

## V. Concluding Comments

{43} In conclusion, we want to make it clear that we do not lightly reverse. From the hearings and the record in regard to discovery, it is not difficult to understand any frustration, if not also aggravation, on the part of the district court, produced from Defendant's opposition on several fronts to discovery. The court carefully reviewed all of the documents Defendant sought to protect. As to those claimed to be protected

under the ROIA, the court obviously took pains to determine the nature or substance of the documents and appears to have conscientiously sought to protect peer review documents of any substance. When the issues ultimately came to the very few documents at issue here, documents that Defendant concedes were harmless in terms of its liability, it is apparent that the court's fuse was about to run out with regard to Defendant's ROIA position and Defendant's pursuit of writs in the Supreme Court and in this Court.

{44} We fully appreciate the work of the district court, and we can understand why the court seemed somewhat at wit's end. Nevertheless, we think that the court's focus was misplaced. The focus simply and solely should have been on whether the parties fulfilled their burdens under the *Smith* requirements: Did Defendant satisfy its burden on exclusivity, did Plaintiffs satisfy their burden on criticality, and what facts stated in findings support the answers to those questions? We are unable to discern from anything in the record that the methodology required by *Smith* was applied.

{45} Thus, to conclude, the court acknowledged that Defendant followed the correct procedure for an appeal by submitting to a contempt sanction. The record does not reflect that the district court determined that Defendant failed to sustain its burden to prove that the data, information, or opinion in question was generated or formed exclusively for peer review and for no other purpose. The court did not enter findings to support such a determination. The court's finding of "innocuous and routine" cannot be read as an implicit finding that Defendant failed to sustain that burden. Indeed, on the

record consisting of the Grosse affidavit and the documents at issue, without further inquiry we fail to see how the court could have found that Defendant did not sustain its burden. Further, the district court did not determine that the documents were critical to Plaintiffs' claims. Nor did the court enter findings to support such a determination. Moreover, the court's findings that the documents were innocuous and routine would indicate that the court would not have been able to make a determination that the documents were critical to Plaintiffs' claims. Finally, for the reasons stated earlier in this opinion, we see no basis on which the court could properly determine that Defendant lacked a good faith basis in seeking either the writ of superintending control in the Supreme Court or a writ of error in this Court, or on which the court could sanction Defendant for seeking the writs.

**CONCLUSION**

{46} The district court erred in entering its discovery and contempt orders against Defendant. The $2000 punitive sanction is reversed, and the funds are to be returned to Defendant.

{47} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, and RODERICK T. KENNEDY, Judges.