**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2012-NMCA-101**

**Filing Date: August 28, 2012**

**Docket No. 30,066 consolidated with Docket No. 30,048**

**PETER BREEN,**

>       **Plaintiff,**

**and**

**TAMI SCHNEIDER,**

>       **Non-Party Appellant,**

**v.**

**STATE OF NEW MEXICO**
**TAXATION AND REVENUE**
**DEPARTMENT, DONA COOK,**
**and CAROLYN WOLF,**

>       **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**James A. Hall, District Judge**

Tami Schneider
Santa Fe, NM

Pro Se Appellant
Michael Dickman
Santa Fe, NM

for Appellees

**OPINION**

**KENNEDY, Judge.**

**{1}**      In this consolidated appeal, we address whether the Tax Administration Act's (Act) provisions protecting the privacy of citizens' tax information, together with Rule 11-502 NMRA, which provides an evidentiary privilege for records and returns that are required by law to be made, applies to exclude gross receipts tax returns and other related documents from discovery in this case. Tami Schneider is not a party to this action, which is a case involving employment discrimination between her husband, Peter Breen (Plaintiff), his employer, the Department, and two of his supervisors, Dona Cook and Carolyn Wolf (collectively, Defendants). Schneider appeals an order of the district court permitting subpoenas duces tecum to be issued to herself and the Department as requested by Defendants in this case for various tax-related documents from her law practice. Before the district court, Schneider unsuccessfully asserted that her gross receipts tax information was privileged based on confidentiality provisions in NMSA 1978 Chapter 7, Article 1 (1965, as amended through 2009) of the Act and Rule 11-502 in response to Defendants' request for the subpoenas in question. Schneider seeks review of the district court's order, both by direct appeal and writ of error.

**{2}**      We hold that the Act, whose taxpayer confidentiality provisions are properly recognized and utilized to create an evidentiary privilege against disclosure of tax information by Rule 11-502, bars discovery of Schneider's gross receipts tax information by way of either subpoena that was issued in this case. Further, we hold that Schneider has not waived her rights or the privilege. Accordingly, we reverse the district court and remand to quash the subpoenas.

## I.      BACKGROUND

**{3}**      Plaintiff filed suit against Defendants as an appeal from an Equal Employment Opportunity Commission's finding of no probable cause regarding various employment-related causes of action, including discrimination and retaliation. Defendants were provided counsel through the State's Risk Management Division. Included in Plaintiff's allegations of fact was the accusation that, upon filing his complaint against Defendants, they had retaliated against him by asserting irregularities with regard to gross receipts returns filed by Schneider's private law practice. In his deposition, Plaintiff expanded on this episode, stating that Defendants' ill intent was demonstrated by the fact that Schneider had filed non-compliant gross receipts returns for some years prior to his complaint without action by the Department. Defendants' timing of the notice from Plaintiff's supervisor thus demonstrated their intent to retaliate against him and his family.

**{4}**      Two weeks after the deposition, Defendants added Schneider to their witness list. Immediately thereafter, they filed a motion seeking leave to subpoena Schneider and the Department seeking "[a]ll CRS-1 [f]orms, [r]egistration [c]ertificates, [a]ssessments, [d]elinquency [n]otices, correspondence[,] and all other documents related to the New

2

Mexico gross receipts taxes reported and/or paid . . . for the time period from January 1, 2000 through and including June 30, 2008."[1]

**{5}** Defendants requested a hearing to precede the issuance of the subpoenas. Schneider did not attend the hearing requested by Defendants' counsel on its motion to issue the subpoenas. However, Defendants demonstrated their understanding that discovery of tax information was a potential problem early on. Defense counsel informed the court during the hearing on their motion to issue the subpoenas that "it is the policy of the . . . Department statewide not to honor those subpoenas." He further stated "that's because of the statutory confidentiality of tax records. I have not, I or my clients, do not have access to those records without violating the law." Defense counsel further stated that absent a "really necessary" court order, release of the records would constitute "a gross breach of the statute [and] I believe a misdemeanor."

**{6}** To provide Schneider an opportunity to respond to the subpoenas, the court issued the subpoena to her and waited for her to respond before allowing the subpoenas to issue. Schneider responded with a motion to quash the subpoenas and argued that confidentiality provisions contained in the Act, NMSA 1978, § 7-1-4.2 (2003), and the evidentiary privilege embodied in Rule 11-502, prohibited disclosure of the information without her permission. She also requested a protective order. Schneider furthermore argued that, pursuant to NMSA 1978, Section 9-11-11 (1977), Defendants' attorney could not represent them and, therefore, could not subpoena her tax records on their behalf. The district court denied Schneider's motion and ordered the subpoenas and protective orders to be issued to the Department and to her. The order was issued, and Schneider timely sought appellate review of the order, both by way of direct appeal and writ of error. We granted the petition for writ of error in February 2010.

## II. DISCUSSION

**{7}** Schneider argues several issues. First, as a threshold issue, she contends that we have jurisdiction to hear her case either by writ of error or on direct appeal. Second, she argues that Defendants' counsel is inappropriate because he is not a commissioned or special attorney general. Last, she argues that the confidentiality of her gross receipts tax information is privileged from disclosure. We address each argument in turn.

---

[1]"Tax information" is not defined by New Mexico statute. We note the similarity of the subpoena's scope to 26 U.S.C. § 6103(b)(2)(A) (2010), which states: "The term 'return information' means . . . a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits . . . tax withheld . . . or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return."

**A.      The District Court Order is a Collateral Order Properly Considered Pursuant to a Writ of Error**

**{8}**      Schneider argues, and we agree, that the order authorizing the subpoenas in this case is, at least in part, reviewable by writ of error under the collateral order doctrine as defined in *Carrillo v. Rostro*, and we therefore have jurisdiction to hear this writ of error.  114 N.M. 607, 612-13, 845 P.2d 130, 135-36 (1992).  "A writ of error is the procedural device for invoking the collateral order doctrine.  The collateral order doctrine is a narrow exception [to the final order requirement], whose reach is limited to trial court orders affecting rights that will be irretrievably lost in the absence of an immediate appeal."  *Williams v. Rio Rancho Pub. Sch.*, 2008-NMCA-150, ¶ 7, 145 N.M. 214, 195 P.3d 879 (alteration in original) (internal quotation marks and citations omitted).  Under the collateral order doctrine, the order for which review is sought by writ of error "must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment."  *Carrillo*, 114 N.M. at 613, 845 P.2d at 136 (internal quotation marks and citation omitted).

**{9}**      The order that Schneider seeks to overturn is conclusive that, despite her objections, the subpoenas will be issued and her gross receipts tax information will be disclosed, if not by her personally, then by the Department.  The issue of her rights and privileges concerning the confidentiality of this information, and Defendants' attempts to bootstrap this information as a component of joint income tax returns, have nothing to do with the claims Plaintiff asserts against Defendants.

**{10}**      The order at issue here is not a final order disposing of merits concerning the underlying case.  *Cf. Capco Acquisub, Inc. v. Greka Energy Corp.*, 2007-NMCA-011, ¶ 17, 140 N .M. 920, 149 P.3d 1017 (stating the characteristics of a final, appealable order).  Rather, this matter solely and finally determines whether records of a non-party to the case are allowed to be disclosed at all.  Defendants have sought the same records from two sources.  Schneider alleges statutory and evidentiary privileges against disclosure of her records by herself, as well as special statutory provisions prohibiting disclosure by the Department under the circumstances of this case.  If the requested information is, as Schneider asserts, non-discoverable, then the records cannot be produced under either subpoena.  Schneider's issues cannot fairly be resolved at the end of a trial of the underlying case and would be unreviewable on appeal from a final judgment because she is not a party to the action.  *St. Sauver v. N.M. Peterbilt, Inc.*, 101 N.M. 84, 87, 678 P.2d 712, 715 (Ct. App. 1984) (dismissing an appeal where a party was "not an aggrieved party" to the underlying lawsuit).  Thus, our Opinion will resolve an issue regarding a non-party's rights that are completely separate from the merits of the action.

**{11}**      We note that this Court has held in *King v. Allstate Ins. Co.* that an order compelling discovery is not ordinarily a collateral order.  2004-NMCA-031, ¶ 18, 135 N.M. 206, 86 P.3d 631.  Yet, in *King*, this principle applied to the parties in a lawsuit, as the order in that case compelled discovery from a party insurance company, who had the option of refusing to

comply, being held in contempt, and taking a direct appeal from that final order. *Id.* ¶ 19. Here, Schneider is not a party, and her dispute cannot be resolved so simply as by appealing an order of contempt as we directed in *King*.

{12}     We also distinguish the present case from *In re Estate of Pino*, where we denied a writ of error concerning an order compelling a paternity test of the estate's executor and his wife concerning the deceased because the issue would be reviewable on appeal from a final judgment. 115 N.M. 759, 761-62, 858 P.2d 426, 428-29 (Ct. App. 1993). Similarly to *King*, this Court concluded that "[i]f it is the very taking of their blood to which the [appealing party] object[s], they could force the issue by refusing to comply with the order and appealing any sanction order." *Id.* at 761, 858 P.2d at 428. We explained that "[c]riminal or civil contempt proceedings are appealable in New Mexico. . . . The availability of review after criminal contempt is one reason why discovery orders in general are not appealable in federal court." *Id.* at 761-62, 858 P.2d at 428-29. Again, Schneider is not a party to the underlying case as was Pino's father, the executor. Despite Schneider's objection and refusal to comply with her subpoena, the Department could still disclose her tax returns and other related records pursuant to the subpoena that was issued to it. Schneider's assertion of confidentiality as against the Department's release would be incapable of resolution absent the writ of error. Thus, were the Department to comply before Schneider's personal claim was determined, a contempt proceeding would not likely occur, as the records would be discoverable from the Department, and such a proceeding would be useless to seek appellate review. Conversely, the right Schneider asserts to bar disclosure by anyone absent her personal acquiescence operates equally against both subpoenas. To adjudicate only the Department's subpoena and then to compel her to return to the district court to be held in contempt for refusing to comply with hers to perfect her direct appeal makes no sense. In *Estate of Pino*, the father/executor of his deceased son's estate and the mother were fighting a subpoena served upon them to provide genetic information that could be used to link a child's paternity to their deceased son as the alleged punitive father. The issue was thus inextricable from the merits of the underlying heirship case. *Id.* at 760, 858 P.2d at 427. Proof of paternity in *Estate of Pino*, via the blood tests, would establish heirship and entitlement to the estate or lack thereof.

{13}     Unlike *Estate of Pino*, the discovery requested in this case is not of the same subject matter as the underlying action. Records concerning Schneider's tax filings do not prove discrimination against Plaintiff. They merely support an inference of intent. Therefore, *Estate of Pino*'s insistence on contempt proceedings to deter "piecemeal appeals on unimportant issues[,]" *id.* at 761-62, 858 P.2d at 428-29, makes sense there, but would be turned on its head in this case, as the right of confidentiality in one's tax information conferred by statute is important, fully litigated, and squarely at issue as to both subpoenas in this case, but decidedly not of the "same subject matter" as the underlying action. *Id.* at 760, 858 P.2d at 427. We hold that the portion of the order, denying Schneider's motion to quash and allowing the Department's subpoena to be issued, is properly addressed by writ of error.

**{14}** Resolving the Department's subpoena by writ of error only for us to remand to have Schneider held in contempt for the sake of finality makes no sense. The issue is important, and *Estate of Pino* is inapposite to this situation. There, it was a straight line through the merits of the case to the contested discovery matter. Here, the court's order denying Schneider's motion to quash the subpoena directed at her regards materials entirely collateral to the underlying case. The procedural morass that would result from separating the appeals, as well as the posture of the case with regard to Schneider's own subpoena, supports resolution by writ of error as well.

**{15}** Alternatively, Schneider took her direct appeal as well as filing the writ of error. Schneider's issue is fully developed, and there is no further order that could be directed at the propriety of either subpoena, but particularly Schneider's. To the extent Defendant's attempt to characterize this appeal as interlocutory, we conclude otherwise. If *Estate of Pino* might otherwise apply to require a final order in the form of a contempt finding against Schneider, it should not do so here. Our courts recognize practical finality when "all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible." *Kelly Inn No. 102, Inc. v. Kapnison*, 113 N.M. 231, 236, 824 P.2d 1033, 1038 (1992) (internal quotation marks and citation omitted). We conclude below that Schneider's right to confidentiality in her law practice's gross receipts tax information is a personal right and enforceable, both as to her subpoena and to prevent disclosure by the Department or Plaintiff. Again, the information sought here is not proof of discrimination, but evidence that may, with other facts, support an inference of the discrimination that Plaintiff alleges. As noted, Plaintiff has not sought the documents involved.

**{16}** The order denying the motion to quash practically disposed of all issues raised by Schneider. The disparity of effect inherent to resolving the Department's subpoena by writ of error because Schneider possesses no personal ability to refuse on the Department's behalf while leaving her own subpoena unaddressed is manifest and potentially unjust. The subpoena directed at Schneider should be resolved in this case one way or the other, whether by writ of error or by direct appeal as a final order. The effect of the order with regard to issuing the subpoena to the Department is also final as to resolving Schneider's assertion of confidentiality and privilege. Either by writ of error or by direct appeal of a practically final order, our consideration of the merits of this appeal is proper. In the case at bar, a contempt proceeding would not be available for appeal because the Department's subpoena was issued over Schneider's objections, and she has no power of refusal to comply with that subpoena.

**{17}** Defendants argue that the order, as a whole in this case, is not collateral by likening it to our holding in *Williams*, where we refused to apply the collateral order doctrine. 2008-NMCA-150, ¶¶ 7-9. In *Williams*, a student sought and was granted an injunction ordering his high school to allow him to participate in extracurricular activities from which he had recently been barred. *Id.* ¶¶ 2-4. The school moved to dissolve the injunction, and the district court denied the request. *Id.* ¶¶ 5-6. Appealing from the order denying its motion, the school filed a writ of error with this Court, seeking "us to rule on the question of whether students have a legal right, cognizable in state district court, to participate in

extracurricular activities." *Id.* ¶ 1. In *Williams*, the merits of the injunction also dealt with the underlying issue whether the student had a cognizable right to participate in extracurricular activities. *Id.* ¶ 12. We concluded that the school failed to demonstrate that the order denying its motion was completely separate from the merits of the action and, therefore, the order was not collateral. *Id.* ¶ 9. The case at bar differs greatly from *Williams*, as the order issuing the subpoenas is completely unrelated to the merits of the case. The two are separate and, therefore, granting the writ of error is appropriate here.

**{18}**     In addition, Defendants cite *Williams* for the proposition that, with regard to civil cases, only two types of orders have been held to be collateral orders, one of which was related to governmental immunity in a contract suit, and the other was related to a qualified immunity issue. *Id.* ¶ 8. Even so, we are not limited by the fact that we have so far only granted writs of error in those situations. That fact was not dispositive in *Williams*, as we explicitly stated that the order in that case failed on the basis that its subject matter was not separate from the merits of the case. *Id.* ¶ 9. And, the order at issue will not be dispositive of the merits in the present case; however, this case meets the three requirements for considering a collateral order by way of writ of error.

**{19}**     Thus, with regard to the issue of the subpoenas, we conclude that the collateral order doctrine is applicable to permit review of the order denying Schneider's motion to quash by way of a writ of error. However, we alternatively entertain Schneider's direct appeal of the subpoena directed at her, holding that the doctrine of practical finality permits it as well.

**B.**     **Authority of Defendant's Counsel to Request Subpoenas**

**{20}**     To the extent that Schneider argues on appeal that Defendants' counsel did not have authority to try the underlying case or subpoena tax information on behalf of Defendants, we conclude that the order on this particular issue was not collateral, and we therefore do not have jurisdiction to hear this issue. Schneider argues that an attorney, representing Defendants in this matter on behalf of the Division, cannot properly represent Defendants without being a commissioned or special attorney general. In the same order in which the district court dealt with the subpoena issue, the court held for the second time that the attorney contracted by the Division to represent Defendants in this action did not need to be commissioned and could proceed with their representation or, more importantly, request subpoenas to be issued on their behalf. Defendants incorrectly assert that this Court had previously decided the issue. We did not. *Breen v. State Dep't of Taxation & Revenue*, No. 29,849, slip op. (Ct. App. 2010) (holding that the issue of proper representation was not met for resolution on appeal because of the lack of finality in the plaintiff's case). The district court had already ruled on this issue with regard to Plaintiff's same argument in the underlying action and, likewise, held that Defendants' counsel did not need to be commissioned. We conclude that this issue regarding Defendants' representation is not collateral because it is still related to the merits of the underlying action and, as previously noted, can be reviewed on an appeal from a final judgment. For these reasons, we do not review this issue.

**C.** **Schneider's Gross Receipts Tax Information is Protected by a Privilege Against Disclosure Which Has Not Been Waived**

**{21}** Although questions concerning discovery matters are generally reviewed for abuse of discretion, questions involving the construction of a statute and the application of a privilege are reviewed de novo. *Estate of Romero ex rel. Romero v. City of Santa Fe*, 2006-NMSC-028, ¶ 6, 139 N.M. 671, 137 P.3d 611; *Gordon v. Sandoval Cnty. Assessor*, 2001-NMCA-044, ¶ 12, 130 N.M. 573, 28 P.3d 1114. Under the plain meaning rule, we give effect to the statute's language and refrain from further interpretation when the language is clear and unambiguous. *Sims v. Sims*, 1996-NMSC-078, ¶ 17, 122 N.M. 618, 930 P.2d 153. "We apply the same rules of construction to procedural rules adopted by the Supreme Court [and sections of the Administrative Code] as we do to statutes." *State v. Miller*, 2008-NMCA-048, ¶ 11, 143 N.M. 777, 182 P.3d 158; *see PC Carter Co. v. Miller*, 2011-NMCA-052, ¶ 11, 149 N.M. 660, 253 P.3d 950. "The party claiming privilege has the burden of establishing that a communication is protected." *Santa Fe Pac. Gold Corp. v. United Nuclear Corp.*, 2007-NMCA-133, ¶ 13, 143 N.M. 215, 175 P.3d 309. When a party asserts a privilege and prevails, "the information is not discoverable under the plain language of Rule 1-026(B)(1) [NMRA]." *Pincheira v. Allstate Ins. Co.*, 2008-NMSC-049, ¶ 23, 144 N.M. 601, 190 P.3d 322. Thus, not all relevant evidence is discoverable.

**{22}** Assuming Schneider's gross receipts tax information was relevant in Defendants' case against Plaintiff, it would ordinarily be discoverable if not protected by a privilege. Rule 1-026(B)(1) ("Parties may obtain discovery of any information, not privileged, which is relevant to the subject matter involved in the pending action."); *see Estate of Romero*, 2006-NMSC-028, ¶ 7 (stating the general rule that any party must provide information relevant to a pending case subject to evidentiary privileges). In her memorandum to the district court, Schneider explicitly asserted her rights under the taxpayer bill of rights, Section 7-1-4.2(H) and confidentiality provisions of the Act, pointing out that tax records are the subject of statutes requiring they be treated with stringent confidentiality. She further asserted a privilege against disclosure based on Rule 11-502, which recognizes statutory bases for non-disclosure, predicated on the fact that tax returns and related documents are required to be filed. She particularly noted Section 7-1-4.2(H), which states that taxpayers have a general right to keep their tax information confidential as a source of the evidentiary privilege to decline to produce her tax information. She also objected that the language "and all other documents related" was vague. Defendants responded that the documents sought were relevant and discoverable and did not address the privacy statutes or evidentiary rule in their pleading. Defendants argued, and the district court agreed, that Section 7-1-8.4 allowed the Department to disclose the information requested by the subpoena with certain conditions. On appeal, Defendants contend that, in the alternative, Schneider has waived the privilege.

**{23}** We mentioned earlier that, under Rule 1-026, privileged matters are simply not discoverable. Schneider bases what is essentially a claim of privilege on the confidentiality provisions of the Act. In New Mexico, where the application of privileges is narrowed only

8

to those allowed by the Constitution—self-incrimination—or those promulgated by Supreme Court rule, *Pub. Serv. Co. of New Mexico v. Lyons*, 2000-NMCA-077, ¶ 11, 129 N.M. 487, 10 P.3d 166, legislated privileges are generally regarded as an unconstitutional intrusion into judicial rule-making. *Ammerman v. Hubbard Broad., Inc.*, 89 N.M. 307, 310-11, 551 P.2d 1354, 1357-58 (1976). The source of any evidentiary privilege in this case must be found in Rule 11-502. The rule states:

> A person, corporation, association[,] or other organization or entity, either public or private, *making a return or report required by law* to be made has a *privilege to refuse to disclose and to prevent any other person from disclosing* the return or report, *if the law requiring it to be made so provides*. . . . No privilege exists under this rule in actions involving perjury, false statements, fraud in the return or report[,] or other failure to comply with the law in question.

(Emphasis added.)

**{24}**    Rule 11-502 explicitly makes the privilege dependent on whether the relevant statutes that require the return or report to be made also provide for a privilege to refuse disclosure. Our Supreme Court recognized the incorporation of certain statutory privileges when it adopted Rule 11-502. *State ex rel. Att'y Gen. v. First Jud. Dist. Ct.*, 96 N.M. 254, 260, 629 P.2d 330, 336 (1981), *abrogated on other grounds by Republican Party of N.M. v. N.M. Taxation & Revenue Dep't*, 2012-NMSC-___, ___ P.3d ___ ( No. 32,524, June 18, 2012). We regard this inclusion as making the boundaries of the privilege co-extensive with the protections afforded by the relevant statute. Rule 11-502 embodies a recognition that "when the Legislature requires a person to file a return or report, it may condition that requirement with a guarantee of confidentiality, even to the point of creating a limited testimonial privilege with respect to the contents of that report." *Albuquerque Rape Crisis Ctr. v. Blackmer*, 2005-NMSC-032, ¶ 29, 138 N.M. 398, 120 P.3d 820 (Bosson, C.J., dissenting). Because Rule 11-502 provides taxpayers with "a privilege to refuse to disclose and to prevent any other person from disclosing the return or report, if the law requiring it to be made so provides[,]" the rights provided by statute dictate how the privilege applies to Schneider, and how it applies to the Department. As laid out above, Section 7-1-4.2(H) broadly protects taxpayers' personal right against disclosure. Section 7-1-4.2(H) explicitly states that "the right to have the taxpayer's tax information kept confidential" is one of "[t]he rights afforded New Mexico taxpayers during the assessment, collection[,] and enforcement of any tax administered by the [D]epartment." Thus, to determine the applicability of the evidentiary privilege, we must first ascertain the boundaries of the statutory right.

**{25}**    This codification by judicial rule of a statutory purpose promoting confidentiality has a parallel in California where laws regarding the confidentiality of tax information are similarly restrictive to ours, including criminal penalties for wrongful disclosure. California has judicially recognized a privilege against disclosure of tax return information based on those statutes, stating:

9

If the information can be secured by forcing the taxpayer to produce a copy of his return, the primary legislative purpose of the secrecy provisions will be defeated. The effect of the statutory prohibition is to render the returns privileged, and the privilege should not be nullified by permitting third parties to obtain the information by adopting the indirect procedure of demanding copies of the tax returns.

*Webb v. Standard Oil Co. of Cal.*, 319 P.2d 621, 624 (Cal. 1958). *Webb*'s conclusion in the case parallels ours. Here, owing to cases such as *Ammerman*, a judicial rule of evidence to confirm a statutory right of confidentiality is required. 551 P.2d at 1359. Although raised by Schneider, the district court made no ruling concerning her interposing Rule 11-502 as a bar to disclosure, and no argument as to the privilege was made by Defendants. The concurrence's citation to *Schnabel v. Superior Court*, 854 P.2d 1117, 1127 (Cal. 1993) involves a situation with medical peer review records not subject to similar statutory protections in either California or New Mexico.

**{26}** In New Mexico, a section of the Act titled "New Mexico taxpayer bill of rights" provides confidentiality in their tax information to taxpayers. Section 7-1-4.2(H). The taxpayer bill of rights includes "the right to have the taxpayer's tax information kept confidential unless otherwise specified by law, in accordance with [NMSA 1978,] Section 7-1-8 [(2009)]." Section 7-1-4.2(H). Section 7-1-8(A) also articulates that "[i]t is unlawful for any person other than the taxpayer to reveal to any other person the taxpayer's return or return information, except as provided in [NMSA 1978,] Sections 7-1-8.1 through 7-1-8.10 [(2009)]." We have previously recognized that confidentiality of tax records as existed under a former version of Section 7-1-8 was intended to enhance communication between taxpayers and the Department and protect privacy and Fifth Amendment privilege, as well as prevent misuse of information by insiders. *Meridian Oil, Inc. v. N.M. Taxation & Revenue Dep't*, 1996-NMCA-079, ¶ 20, 122 N.M. 131, 921 P.2d 327. Some of the privacy interests involved in tax returns and related information have been enumerated. "[A]side from disclosing a taxpayer's income, information normally regarded as sensitive and personal, such as marital status, dependents, business dealings, investments, religious affiliations, charitable inclinations, property holdings, and debt obligations" are also part and parcel of information that can be gleaned from tax information. *People v. Gutierrez*, 222 P.3d 925, 933 (Colo. 2009) (internal quotation marks and citation omitted). The public policy is strong and mostly universal in giving taxpayers protection through confidentiality of these records. "[E]very other state in the country (including the District of Columbia) has adopted an analogous statutory regime, evincing a national consensus that taxpayers' tax returns are considered confidential, private communications with the [D]epartment of [R]evenue and should be made available for non-tax purposes only in the rarest of circumstances." *Id.* New Mexico has followed suit. One of those rare circumstances is Section 7-1-8.4(A) providing several exceptions to mandatory confidentiality that were found by the district court to be relevant to the present case. Section 7-1-8.4(A) states:

An employee of the department may reveal to:

A. a district court, an appellate court[,] or a federal court, a return or return information:

(1) in response to an order thereof in an action relating to taxes or an action for tax fraud or any other crime that may involve taxes due to the state and in which the information sought is about a taxpayer who is party to the action and is material to the inquiry, in which case only that information may be required to be produced in court and admitted in evidence subject to court order protecting the confidentiality of the information and no more;

(2) in an action in which the [D]epartment is attempting to enforce an act with which the [D]epartment is charged or to collect a tax; or

(3) in any matter in which the [D]epartment is a party and the taxpayer has put the taxpayer's own liability for taxes at issue, in which case only that information regarding the taxpayer who is party to the action may be produced, but this shall not prevent revelation of department policy or interpretation of law arising from circumstances of a taxpayer who is not a party[.]

**{27}** This section parallels the overarching view of Section 7-1-4.2(H) that assessment, collection, and enforcement of tax laws is the essence of tax administration, thus, creating an exception for disclosure during judicial proceedings when the taxpayer is a party, and tax administration is the gist of the case. *See Harley H. Hoppe & Assocs., Inc. v. King Cnty.*, 255 P.3d 819, 826 (Wash. Ct. App. 2011) ("Tax information is confidential and privileged, and except as authorized by this section, neither the department nor any other person may disclose tax information. [The] statute . . . imposes an overarching general prohibition against the disclosure of tax information." (internal quotation marks and citation omitted)). *Hoppe* further held:

"[T]ax information" means confidential income data and proprietary business information obtained by the department in the course of carrying out the duties now or hereafter imposed upon it in this title that has been communicated in confidence in connection with the assessment of property and that has not been publicly disseminated by the taxpayer, *the disclosure of which* would be either highly offensive to a reasonable person and not a legitimate concern to the public or *would result in an unfair competitive disadvantage to the taxpayer*.

255 P.3d at 826-27.

11

**{28}** Thus, the administrative needs of the Department in its core functions are supported by a narrow exception to confidentiality that is provided by Section 7-1-8.4. It is clear that Schneider's gross receipts information from her law practice are compelled by law to be filed with the Department and other documents and correspondence concerning her tax obligations that are generated thereby are fairly characterized as "tax information." *See* 3.2.1.18(H) NMAC (12/30/03) (amended 10/15/10) ("Regardless of the source of payment or the fact of court appointment, the fees of attorneys are subject to the gross receipts tax to the extent that their services are performed in this state."). The privilege protects Schneider's information from disclosure with regard to records in Schneider's possession. Additionally, we are most mindful that the subpoena directed at Schneider compels her disclosure, obviously against her wishes, and the one directed to the Department seeks disclosure notwithstanding her wishes.

**{29}** In addition, these statutes operate to protect Schneider's information from disclosure by the Department, as Section 7-1-4.2(H) generally mandates that the taxpayer's tax information be kept confidential subject only to Section 7-1-8(A), which states that "[i]t is unlawful for any person other than the taxpayer to reveal to any other person the taxpayer's return or return information[.]" Section 7-1-8 provides a very limited catalog of situations in which it is permissible for the Department to disclose tax information that would otherwise be prohibited. The three aspects of what information is to be kept confidential listed in Section 7-1-4.2(H) and mentioned above are given parallel treatment in Section 7-1-8.4 under which the district court stated the Department's subpoena was permitted. We believe that the district court's view of the statute was unreasonably broad. Insofar as the privilege relates to the order compelling the Department to produce the records pursuant to the subpoena, the gross receipts tax returns and related records are confidential unless the subpoenas are made (1) in a tax-related litigation where the taxpayer is a party; (2) in a tax collection action; or (3) where the taxpayer, who is a party to the action, has placed his or her liability for taxes at issue. *See* § 7-1-8.4(A). Risking a tautology, we point out that all of these limited exceptions reflect the core aspects of tax administration.

**{30}** Defendants make several arguments with regard to the applicability of the privilege. They assert that the first and third exceptions under Section 7-1-8.4(A) were met and, even if these exceptions were not met, Schneider waived her rights. Defendants argue that Schneider meets the first exception because "based on Plaintiff's own affirmative claim of a retaliatory tax audit by Defendant[s] . . . in violation of the Human Rights Act, the action below is one 'relating to taxes.'" Defendants also contend that "because Plaintiff owns a community property interest in [Schneider's] business income, and because he and [Schneider] file their income taxes jointly . . . , Plaintiff's testimony in support of his claim regarding [Schneider's] gross receipts tax non-compliance clearly has put their gross receipts 'tax liability' at issue." Although at odds with the coercive nature of subpoenas, Defendants finally argue waiver and contend that because Schneider's "business income (reported on her gross receipts tax returns) is community property owned by both spouses which is incorporated into, and part of, their joint tax returns[,]" Plaintiff had the ability to, and did,

12

waive Schneider's privilege by putting the returns at issue in his litigation. We examine the exception and waiver arguments in turn.

**{31}** The application of exceptions to the statutory right to confidentiality argued by Defendants requires the taxpayer be a party to the litigation. Defendants argue that Plaintiff's status as Schneider's spouse and community property interest in her earnings is sufficient to meet the requirement that the taxpayer be a party to the litigation. Thus, our inquiry is whether Plaintiff, who has neither offered, asserted, nor sought any entitlement to Schneider's tax information, can nevertheless be considered a taxpayer of Schneider's law practice gross receipts tax. According to NMSA 1978, Section 7-1-3(Y) (2003) (amended 2009), "'taxpayer' means a person liable for payment of any tax, a person responsible for withholding and payment or for collection and payment of any tax, or a person to whom an assessment has been made, if the assessment remains unabated or the amount thereof has not been paid[.]" Chapter 2, Title 3 of the Administrative Code (Code), titled "Gross Receipts Taxes," explains which person or entity is liable for gross receipts taxes. 3.2.4.8 NMAC (4/30/01); 3.2.6.9 NMAC (4/30/01); *see generally Alliance Health of Santa Teresa, Inc. v. Nat'l Presto Indus., Inc.*, 2007-NMCA-157, ¶ 17, 143 N.M. 133, 173 P.3d 55 ("The . . . Code carries the same weight and authority as statute."). In two separate places, that Chapter of the Code states that "[t]he gross receipts tax is imposed on persons engaging in business in New Mexico. Such persons are solely liable for payment of the tax[.]" 3.2.4.8 NMAC; 3.2.6.9 NMAC. Thus, we conclude that only those persons who engage in business can be held liable for the gross receipts tax. As explained by the Supreme Court, "the [gross receipts] tax is levied against *the business of an owner or operator*[.]" *Comer v. State Tax Comm'n of N.M.*, 41 N.M. 403, 406, 69 P.2d 936, 938 (1937). Plaintiff is not a "taxpayer" of Schneider's gross receipts taxes accruing from her law practice. To the extent that Schneider's income from her law practice is included in a joint return, the tax information that concerns taxation of Schneider's gross receipts by the State of New Mexico to produce that income is beyond the scope of their joint tax return. The joint return is outside the scope of the subpoenas and would not contain information concerning Schneider's gross receipts filing habits in any event.

**{32}** In her motion to quash the subpoenas duces tecum, Schneider states that her law practice is "her sole and separate business and files her gross receipts taxes by herself." Schneider asserts that she "has no co-filers for her gross receipts tax[,]" and "Plaintiff has never filed gross receipts for or with [her]." We agree and conclude that Schneider is the only person engaging in the business of her law practice, and she is solely liable for payment of its gross receipts tax obligations. Therefore, only Schneider can be considered the taxpayer with respect to the gross receipts tax generated by her law practice. Because Plaintiff is not liable for the gross receipts tax and, therefore, is not a taxpayer in Schneider's law practice, his participation as a party to the litigation with Defendants is insufficient to meet the requirements of Section 7-1-8.4(A)(1) or Section 7-1-8.4(A)(3).

**{33}** We hold that since Schneider's gross receipts tax information is hers alone and entitled to her right to confidentiality pursuant to Sections 7-1-4.2(H) and 7-1-8, the statutes

that the privilege accorded the statutory rights by Rule 11-502 provides the proper evidentiary privilege to protect her from any involuntary disclosure of this tax information. This privilege applies equally to the subpoena directed against her personally and to bar disclosure by the Department in response to the subpoena directed at them. The gross receipts tax information sought by the subpoenas are thus privileged in accordance with Rule 11-502, and those statutes incorporated by Rule 11-502's language. The tax information thus protected is not discoverable.

**{34}** As the person holding the privilege, it is solely within Schneider's power to waive it. With regard to Defendants' waiver argument, we note that only the taxpayer has the ability to waive the privilege, as only the taxpayer possesses the privilege. *State v. Gonzales*, 1996-NMCA-026, ¶ 14, 121 N.M. 421, 912 P.2d 297 ("A privilege . . . mean[s] that . . . a confidence will receive legal protection so long as the holder of the privilege keeps the confidence himself." (internal quotation marks and citation omitted)); Rule 11-502 ("A person . . . making a return or report required by law to be made has a privilege to refuse to disclose."). To the extent that Defendants' waiver argument also assumes that because of Plaintiff's marriage to Schneider he can waive her rights, we disagree. In effect, through each argument, Defendants contend incorrectly that both spouses share the privilege and that Plaintiff is also the taxpayer of Schneider's law practice as much as Schneider is the taxpayer. Moreover, because Plaintiff is not the taxpayer, he has no ability to waive the taxpayer's privilege under Section 7-1-4.2(H). Reciprocally, Plaintiff has not sought Schneider's tax information in this case and, by this ruling, may not do so owing to Schneider's privilege. Prognostication as to the effect of this fact on his case is not for our consideration here. *See In re Miller*, 475 N.W.2d 675, 679 (Iowa Ct. App. 1991) (holding the obligation for providing tax information falls to the parties and their attorneys). We do not address the effect of any subsequent voluntary release of tax information by Schneider as outside the scope of this appeal, or Plaintiff's use of such information, which could well involve Schneider waiving her rights, from which Defendants would profit as well.

## III.    CONCLUSION

**{35}** Since the gross receipts tax information for Schneider's law practice is privileged, we reverse the district court's order authorizing the issuance of both subpoenas for Schneider's returns and the specified related tax information. Accordingly, we remand to the district court to quash the subpoenas.

**{36}    IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**I CONCUR:**

_____

14

**TIMOTHY L. GARCIA, Judge**

**JONATHAN B. SUTIN, Judge, specially concurring**

**SUTIN, Judge (specially concurring).**

**{37}** One difficulty in deciding the issues in this case is that the case was not particularly well tried, is not particularly well presented on appeal, and is convoluted. But decide the issues we must.

**Schneider's Status**

**{38}** I am not sold on the majority opinion's need to emphasize that Schneider was not a party. Indications are that she was not a party when she filed a motion to quash the subpoenas under Rule 1-045(C)(3) NMRA, although, in essence, it would seem that she became a party to the action in a limited manner, namely, to obtain an order quashing the subpoenas. The majority Opinion in fact determines (erroneously in my view) that Schneider had a direct appeal to this Court in addition to a right to obtain review through a writ of error. The appellate rules call a person who files an appeal, and for that matter a person who seeks a writ of error, a "party." *See* Rule 12-202(B)(1) NMRA; Rule 12-503(D), (E) NMRA. The direct appeal determination seems inconsistent with the position that Schneider was not a party, given that the Opinion indicates Schneider was a person sufficiently aggrieved by the court's order allowing the subpoenas to directly, *in the action*, obtain relief from the district court's order—certainly indicia of at least some sort of party status. All this said, however, Schneider's limited status in the action does not adversely affect her procedural rights.

**Writ of Error**

**{39}** While I am persuaded that a writ of error should be available to Schneider in this case, I do not buy into the majority Opinion's analyses of *King* and *Pino* in reaching the Opinion's conclusions that those cases are not applicable. I simply do not think that, under the particular circumstances of this case, Schneider was required to either seek an interlocutory appeal or to undergo contempt for refusing to comply with the subpoena. And with no writ of error opportunity for Schneider, once the Department received its subpoena, Schneider would be left with no way to seek relief in this Court before the documents would enter the public arena. Further, because that would be a finality giving rise under the circumstances here to the right to pursue a writ of error, I see no reason to reach out, expand, and apply the doctrine of practical finality as indicated in the majority Opinion. *See In re Larry K.*, 1999-NMCA-078, ¶¶ 11-12, 127 N.M. 461, 982 P.2d 1060 (indicating that decisions applying practical finality "were all concluding decisions of a particular tribunal—mostly orders remanding the case to a lower tribunal" and stating that "[n]ot to limit the doctrine of practical finality would allow the exception to fast swallow the rule").

**Privilege**

**{40}**     Section 7-1-4.2 is entitled "New Mexico taxpayer bill of rights." It starts out: "The rights afforded New Mexico taxpayers during the assessment, collection[,] and enforcement of any tax administered by the department as set forth in the Tax Administration Act include . . . ." *Id.* The applicable Subsection is 4.2(H), which reads, "the right to have the taxpayer's tax information kept confidential unless otherwise specified by law, in accordance with Section 7-1-8[.]" Section 7-1-8 is titled "[c]onfidentiality of returns and other information." Section 7-1-8(A) reads: "It is unlawful for any person other than the taxpayer to reveal to any other person the taxpayer's return or return information, except as provided in Sections 7-1-8.1 through 7-1-8.10 NMSA 1978."

**{41}**     As I understand the majority Opinion, the incomplete first sentence in Section 7-1-4.2 is not to be read to provide confidentiality only if related to an administrative proceeding involving assessment, collection, or enforcement. Instead it is to be read to provide confidentiality as to documents that have been submitted to the tax authorities in an administrative proceeding. The language arguably can be read either way. The latter interpretation is not unreasonable, given that one would think the Legislature intended to protect taxpayers during, as well as after, administrative proceedings. The latter interpretation would allow a conclusion that the confidentiality provided in Section 7-1-4.2 through Subsection 4.2(H), yet subject to Section 7-1-8, is a privilege that can be enforced in Rule 11-502.

**{42}**     Then, assuming that the confidentiality provided in Section 7-1-4.2(H) is a privilege that can be enforced as such in Rule 11-502, the question remains whether Schneider has a right not to produce pursuant to the subpoena served on her, as well as a right to preclude the Department from producing or otherwise disclosing pursuant to the subpoena served on it. One can arguably interpret Sections 7-1-4.2(H) and 7-1-8(A) to relate only to production by the Department, given that these sections are in the Tax Administration Act, appear to relate only to administrative proceedings, and Section 7-1-8 exclusively deals with disclosure of information or production of documents by the Department. One might arguably interpret these sections, as I think the majority Opinion interprets them, to relate to production by either or both the taxpayer and the Department. The sections can be read either way. The majority Opinion's interpretation is not unreasonable, given a common sense view that if the confidentiality precludes the Department from revelation and production, then why should it not also protect the taxpayer from having to reveal or produce what is in the taxpayer's possession. Why should a distinction be made?

**{43}**     Nothing is all that clear here. The majority Opinion's interpretations and rationales do not flow from plain language. Furthermore, privileges are to be construed narrowly, and the requirements for establishing the privilege are strictly enforced because privileges are viewed as being in derogation of the search for the truth. *See Univ. of Penn. v. EEOC*, 493 U.S. 182, 189 (1990); *Scott v. City of Peoria*, 280 F.R.D. 419, 422 (C.D. Ill. 2011); *Albuquerque Rape Crisis Ctr.*, 2005-NMSC-032, ¶ 18. Nevertheless, I agree with the view

16

that Sections 7-1-4.2(H) and 7-1-8(A) read together constitute a privilege that can be enforced by Rule 11-502. And I also agree with the view that these sections provide confidentiality that protects Schneider in regard to both subpoenas and, therefore, gives rise to a privilege under Rule 11-502 in regard to the subject of both subpoenas. I am also persuaded that Schneider has not waived that protection.

**{44}** But the question then arises, is what the majority Opinion enforces an absolute or unqualified confidentiality right and privilege for persons who file returns? That is, in all civil actions in the district court (except for the limited exceptions in Section 7-1-8.4) does every party who is faced with a discovery order and every non-party faced with a subpoena have a privilege not to produce and to preclude production by others, no matter what, unless the confidentiality is waived? It appears to me that this is the result of the Opinion as it stands. And that concerns me. I respectfully doubt the wisdom of construing the statutes involved here and Rule 11-502 in a virtually unconditional manner. Care should be taken in deciding a case in a way that creates an absolute or unqualified privilege.

**{45}** One might argue that the Legislature thought about the issue and carefully spelled out in Sections 7-1-8.1 through 7-1-8.10 what the limitations and conditions should be in regard to court proceedings. I cannot accept that argument under the circumstances here. As I discuss later in this concurring opinion, I am persuaded that the privilege in Rule 11-502 ought only to apply in this case *at this stage* of the proceeding. Furthermore, I am not convinced that this Court, or the trial court, cannot or should not have the opportunity later in this case to limit or qualify or relax the privilege. Rule 11-502 is a judicially created rule, and I see no reason why its reach cannot be restrained if the circumstances require it. We are not bound to adhere to statutory confidentiality requirements and exceptions in regard to evidentiary privileges. *See Albuquerque Rape Crisis Ctr.*, 2005-NMSC-032, ¶ 24 (Bosson, C.J., dissenting) ("[I]t has been settled law that this Court, and only this Court, may create a testimonial privilege. Unless authorized by the Constitution, the Legislature may not decide who may give testimony in a court of law. The decision to create a testimonial privilege remains a core function of the judiciary as a separate and equal branch of government."). Thus, I am not persuaded that application of the statutes and the rule at this stage of the proceeding should be read to say that, on remand, the privilege cannot still be addressed and be judicially relaxed in later proceedings.

**{46}** The majority Opinion emphasizes that Plaintiff had not sought Schneider's tax information. That is not the question to ask. The question is whether Plaintiff intended to provide testimony or documents relating to Schneider's tax information and whether allowing that evidence would be inadmissible, unfair, or prejudicial to Defendants if Defendants were unable to obtain the tax information on which Plaintiff relied. In my view, the subpoenas should neither have been sought nor allowed in the district court before it was ascertained and made clear in pretrial proceedings (1) what Plaintiff was specifically contending in regard to the role that Schneider's tax information has and the relevancy of that information to his charge of retaliation, and (2) what testimony and documentary evidence Plaintiff intended to present in order to prove retaliation. If the merits of the

retaliation claim would reasonably anticipate consideration of Schneider's tax returns or any related protected tax information, based either on testimony or documentary evidence that Plaintiff intended to present as evidence at trial, that would be the time to test whether subpoenas should be issued and whether the privilege applied, or whether Plaintiff should even be allowed to testify. It could turn out that Plaintiff's tendered testimony or documentation would either be inadmissible or make any subpoena unnecessary. Depending on whether Plaintiff were allowed to testify or produce documents bearing on the tax information, it might well be in the court's discretion to fashion a subpoena for production by the Department or Schneider (or both) of the tax information for review by the court in camera under a protective order as was entered by the court in this case. That protective order entered by the court appears to carefully and satisfactorily protect Schneider's privacy while at the same time following the clear policy to bring all relevant facts before the trier of fact.

**{47}** "The need to develop all relevant facts in the adversary system is both fundamental and comprehensive." *United States v. Nixon*, 418 U.S. 683, 709 (1974). In the federal system, "Rule 501 manifests a congressional desire not to freeze the law of privilege but rather to provide the courts with flexibility to develop rules of privilege on a case-by-case basis[.]" *Univ. of Penn.*, 493 U.S. at 189 (internal quotation marks and citation omitted). The policy should be no different in the New Mexico courts.

**{48}** As one court has put it:

> [I]n deciding whether the privilege asserted should be recognized, it is important to take into account the particular factual circumstances of the case in which the issue arises. The court should weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case.

*Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1061-62 (7th Cir. 1981) (internal quotation marks and citation omitted). As I indicated earlier, courts in New Mexico do not have to follow or enforce a legislatively created privilege. *See Albuquerque Rape Crisis Ctr.*, 2005-NMSC-032, ¶ 24 (Bosson, C.J., dissenting). A court can refuse to follow or enforce a legislative privilege that is inconsistent with a rule. *Id.* ¶ 38. Here, there is no inconsistency. The rule actually indicates that, with regard to tax returns, items that are compelled by a law will be considered privileged under the rule. Still, in my view, this Court can determine that in certain circumstances the facts permit, if not require, a limitation or relaxation or some protective procedure short of an absolute or unqualified privilege.

**{49}** I note that the California case cited by the majority Opinion, *Webb*, 319 P.2d 621, while appearing to support the approach in the majority Opinion, may not be all that helpful. The court later, in *Schnabel*, 854 P.2d at 1127, held that the privilege is not absolute. Also, the statute in *Webb* reads differently than does Section 7-1-4.2(H).

18

**{50}**   In sum, I agree with reversing the district court's order allowing the subpoenas and with quashing the subpoenas at this time, but leaving open the possibility that on remand it may be appropriate to issue the subpoenas and relax the privilege together with use of an appropriate protective order.

_____

**JONATHAN B. SUTIN, Judge**

**Topic Index for** _Breen v. NM Taxation & Revenue Dept._**, Nos. 30,066/30,048**

**APPEAL AND ERROR**

Interlocutory Appeal

Standard of Review

Writ of Error

**CIVIL PROCEDURE**

Collateral Order

Discovery

Evidentiary Hearing

Final Order

Subpoena

Waiver

**CONSTITUTIONAL LAW**

Privacy

**GOVERNMENT**

Attorney General

**EVIDENCE**

Collateral Source Evidence

Privileges

Subpoena Duces Tecum

**JURISDICTION**

Appellate Jurisdiction

**STATUTES**

Interpretation

Legislative Intent

Rules of Construction

**TAXATION**

Gross Receipts Tax