The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **May 10, 2023**

**No. A-1-CA-39724**

**TINA TAWATER,**

Plaintiff-Appellant,

v.

**BOARD OF COMMISSIONERS FOR THE COUNTY OF SANDOVAL and DIEGO TRUJILLO (in his official capacity as records custodian),**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**James A. Noel, District Court Judge**

Grover Law, LLC
Thomas R. Grover
Albuquerque, NM

for Appellant

Law Office of Michael Dickman
Michael Dickman
Santa Fe, NM

for Appellee

**OPINION**

**BUSTAMANTE, Judge, retired, sitting by designation.**

{1} This case involves the Inspection of Public Records Act (IPRA), NMSA 1978, §§ 14-2-1 to -12 (1947, as amended through 2023). Plaintiff Tina Tawater appeals the district court's order exempting three documents from inspection under IPRA. Plaintiff argues the district court erred in determining that (1) all three documents are subject to attorney-client privilege under Rule 11-503 NMRA, and are therefore exempt from inspection under IPRA, Section 14-2-1(G); and (2) the third document is exempt from inspection on the additional ground that it constitutes a letter or memoranda that is a matter of opinion in personnel files, and therefore exempt from inspection under IPRA, Section 14-2-1(C). [1] We reverse the district court's determination that attorney-client privilege exempts the first document from inspection, but affirm the district court's determination that the privilege exempts the second and third documents from inspection. Because we conclude attorney-client privilege exempts the third document from inspection, we do not reach the

---

[1] Some sections of IPRA were amended in 2023, after Plaintiff's request for the documents at issue in this case. The exemption for "attorney-client privileged information" was renumbered from Section 14-2-1(F) to 14-2-1(G) but is substantively identical. The exemption for "letters or memoranda that are matters of opinion in personnel files," *see* § 14-2-1(C), is identical. Because the 2023 amendments do not impact this appeal, we cite the current codification of IPRA for ease of reference.

district court's determination that this document is also exempt from inspection, pursuant to Section 14-2-1(C).

**BACKGROUND**

{2}    In June 2019, Plaintiff submitted an IPRA request to the County of Sandoval (the County) seeking to inspect certain records, including emails sent between the County's Public Information Officer and the County Manager concerning IPRA lawsuits involving the County and the County's processing of IPRA requests. The County produced certain records but advised Plaintiff that certain records were provided with portions redacted and that other responsive records were not disclosed because they fell within IPRA's exceptions for "attorney-client privileged information," or "letters or memoranda that are matters of opinion in personnel files." Section 14-2-1(C), (G).

{3}    Plaintiff sued the Board of Commissioners for the County and Diego Trujillo in his official capacity as records custodian (collectively, Defendants), claiming that Defendants violated IPRA by denying her the opportunity to inspect records responsive to her IPRA request. Defendants, in turn, filed an unopposed motion for in camera review of the three documents withheld from Plaintiff that are at issue in this appeal: (1) an email sent by the Public Information Officer to four recipients: the County Manager, two attorneys for the County, and another County employee on January 7, 2019 (the January 7 email); (2) an email sent by the Public Information

Officer to the County Manager on January 25, 2019 (the January 25 email); and (3) an email sent by the Public Information Officer to the Chairman of the County's Board of Commissioners (the Chairman), and the County Manager on April 25, 2019 (the April 25 email).

{4}     After reviewing the three emails in camera, the district court issued its order, determining that each email is exempt from inspection under IPRA. The district court concluded that all three emails are protected from disclosure by attorney-client privilege and thus exempt from inspection pursuant to IPRA, Section 14-2-1. The district court also concluded that the April 25 email is exempt from inspection on an additional ground—under IPRA's exception for letters or memoranda that are matters of opinion in personnel files, pursuant to Section 14-2-1(C). Plaintiff appeals.

**DISCUSSION**

{5}     Plaintiff argues that the district court incorrectly determined that attorney-client privilege protects the emails from disclosure. "Although questions concerning discovery matters are generally reviewed for abuse of discretion, questions involving . . . the application of a privilege are reviewed de novo." *Breen v. N.M. Tax'n & Revenue Dep't*, 2012-NMCA-101, ¶ 21, 287 P.3d 379.

{6}     IPRA provides that "[e]very person has a right to inspect public records of this state." Section 14-2-1. There are, however, exceptions; as relevant here, IPRA

exempts from inspection "attorney-client privileged information." Section 14-2-1(G); *Republican Party of N.M. v. N.M. Tax'n & Revenue Dep't*, 2012-NMSC-026, ¶ 16, 283 P.3d 853 (observing attorney-client privilege as one of the specific exceptions to disclosure under IPRA).

{7}    Rule 11-503, in turn, governs the scope of the attorney-client privilege in New Mexico. *Bhandari v. Artesia Gen. Hosp.*, 2014-NMCA-018, ¶ 11, 317 P.3d 856. The rule states, in relevant part, that

> B.    A client has a privilege to refuse to disclose . . . a confidential communication made for the purpose of facilitating or providing professional legal services to that client,
>
> (1)    between the client and the client's lawyer or representative;
>
> (2)    between the client's lawyer and the lawyer's representative;
>
> (3)    between the client or client's lawyer and another lawyer representing another in a matter of common interest;
>
> (4)    between representatives of the client or between the client and a representative of the client; or
>
> (5)    between lawyers representing the client.

Rule 11-503(B). Accordingly, the elements of attorney-client privilege are "(1) a communication (2) made in confidence (3) between privileged persons (4) for the purpose of facilitating the attorney's rendition of professional legal services to the client." *Santa Fe Pac. Gold Corp. v. United Nuclear Corp.*, 2007-NMCA-133, ¶ 14,

143 N.M. 215, 175 P.3d 309. Plaintiff concedes that the three emails at issue constitute communications, but argues that each email fails to meet one or more of the remaining elements of the privilege. Based on our in camera review of these communications, we conclude that attorney-client privilege exempts two of the three emails from inspection under IPRA.

## I. Attorney Client-Privilege Does Not Exempt the January 7 Email From Inspection Under IPRA

{8} The January 7 email was sent by the Public Information Officer to four recipients: the County Manager, two attorneys for the County, and another County employee. The email's subject line includes the phrase, "Attorney[-]Client Privileged Communication," and the body of the email discusses the Public Information Officer's handling of an IPRA request.

{9} Plaintiff argues attorney-client privilege does not exempt the January 7 email from inspection under IPRA, contending that the communication was not intended to secure legal advice. Defendants disagree, pointing out that the email's subject line states, "Attorney[-]Client Privileged Communication," and that the recipients included attorneys for the County.

{10} Attorney-client privileges requires that a communication be "made for the purpose of facilitating or providing professional legal services to that client." Rule 11-503(B); *see Santa Fe Pac. Gold Corp.*, 2007-NMCA-133, ¶ 14 (internal quotation marks and citation omitted). Our review shows that the January 7 email

was not made for this purpose, but rather to apprise its recipients of a decision, which the Public Information Officer had previously made concerning an IPRA request, and that this decision fell squarely within the scope of her regular duties. The content of this email provides no indication that it was made for the purpose of acquiring legal advice or necessary for the rendition of a legal opinion. *See Santa Fe Pac. Gold Corp.*, 2007-NMCA-133, ¶ 13 ("A client may claim attorney-client privilege . . . if the communications were made for the purpose of acquiring legal advice for the client."); *see also id.* ¶ 23 (recognizing that a "communication between an attorney and a client is not privileged unless it is necessary for the rendition of a legal opinion or legal advice." (internal quotation marks and citation omitted)).

{11} Defendants fail to persuade us otherwise. Defendants develop no argument addressing the email's purpose and provide no analysis of its content. Instead, Defendants rely on the Public Information Officer designation of the email as "Attorney[-]Client Privileged," but this designation alone does not alter our determination, based on our review of its content, regarding the email's purpose. *See Bhandari*, 2014-NMCA-018, ¶¶ 1, 19, 21 (concluding that a memorandum prepared by a hospital's general counsel, which bore the heading "confidential and subject to attorney-client privilege" was not privileged based in part on an examination of the memorandum's content (alterations and internal quotation marks omitted)).

Attorney-client privilege does not exempt the January 7 email from inspection under IPRA.

**II.    Attorney Client-Privilege Exempts the January 25 and April 25 Emails From Inspection Under IPRA**

{12}    We start by summarizing these emails. The January 25 email was sent by the Public Information Officer to the County Manager and summarizes conversations between the Public Information Officer and attorneys for the County. The conversations, as summarized in the email, relate to a lawsuit filed by Plaintiff against the County, and include the attorneys' interpretation of the scope of Plaintiff's IPRA request related to that lawsuit and direction to the Public Information Officer relate to the request. This email also discusses the Public Information Officer's concerns with one attorney's interpretation of the scope of Plaintiff's IPRA request and direction concerning that request.

{13}    The April 25 email, sent by the Public Information Officer to the County Manager and the Chairman, is similar. This email summarizes a conversation between the Public Information Officer and attorneys for the County. The conversation, as summarized in the email, addresses a pending lawsuit filed by Plaintiff against the County, including how the County should respond to an interrogatory relating to an IPRA request from Plaintiff, an attorney's interpretation of IPRA and assessment of the scope of Plaintiff's IPRA request, and an attorney's direction to the Public Information Officer related to Plaintiff's IPRA request. The

7

April 25 email also discusses the Public Information Officer's concerns about an attorney's interpretation of IPRA.

{14}    Plaintiff argues attorney-client privilege does exempt these emails from inspection under IPRA. For the reasons that follow, we disagree.

{15}    As discussed, the January 25 and April 25 emails summarize conversations between the Public Information Officer and attorneys for the County. Plaintiff does not dispute that the actual conversations, which address pending litigation and contain legal advice and opinions, are protected by attorney-client privilege. *See Santa Fe Pac. Gold Corp*, 2007-NMCA-133, ¶¶ 13, 23; *Henry v. N.M. Livestock Bd.*, \_\_\_-NMCA-\_\_\_, ¶ 35, \_\_\_ P.3d \_\_\_ (A-1-CA-37758, Apr. 28, 2023) (concluding that an attorney's communications with agency line staff members can be subject to attorney-client privilege). We must therefore determine whether attorney-client privilege protects the Public Information Officer's written summaries of these privileged conversations relayed to the County Manager and the Chairman in the January 25 and April 25 emails.

{16}    Plaintiff argues these emails are not protected, contending they were neither (1) between "privileged persons," *Santa Fe Pac. Gold Corp.*, 2007-NMCA-133, ¶ 14, because they were not sent to or from a lawyer; nor (2) made for the purpose of facilitating legal services. We review these arguments in turn.

8

{17}    Contrary to Plaintiff's first argument, the scope of the privilege is not limited to communications between a client and lawyer, but also encompasses communications "between representatives of the client." Rule 11-503(B)(4); *cf.* Rule 11-503(B)(1). Plaintiff does not dispute that the client in this case is the County. *See* Rule 11-503(A)(1) (defining "client" to include an "association, or other entity who consults with, seeks advice from, or retains the professional services of a lawyer"). Plaintiff also does not dispute that the parties to these emails—the County's Public Information Officer, the County Manager, and the Chairman—are "representatives" of the County. *See* Rule 11-503(B)(4); *see also Henry*, ___-NMCA-___, ¶ 35 (concluding that attorney-client privilege can apply to communications with a agency's staff members). The January 25 and April 25 emails were therefore "between privileged persons." *Santa Fe Pac. Gold Corp.*, 2007-NMCA-133, ¶ 14.

{18}    As to Plaintiff's second argument, we conclude that the January 25 and April 25 emails, which summarize privileged conversations, were "made for the purpose of facilitating or providing professional legal services to that client." Rule 11-503(B); *see Santa Fe Pac. Gold Corp.*, 2007-NMCA-133, ¶ 14. Our conclusion is based on the language of Rule11-503 and the purpose of the privilege.

{19}    As discussed, Rule 11-503(A)(1) defines "client" to include a "corporation, association, or other entity," and protects certain communications "between representatives of the client." Rule 11-503(B)(4). This language indicates that the

9

rule's drafters contemplated that the privilege could apply in an organizational context, in which it might not be feasible for an attorney to directly provide privileged legal advice to all representatives of the organization who can act on it. *See Henry*, \_\_\_-NMCA-\_\_\_, ¶ 33 (recognizing that in the corporate context the privilege exists, in part, "to protect . . . the giving of professional advice to those who can act on it" (omission in original) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981)); *see also* Rule 11-503(A)(4) ("[A] communication is 'confidential' if made privately and not intended for further disclosure *except to other persons in furtherance of the purpose of the communication*." (emphasis added)). Thus, in an organizational context, the rule's language and rationale indicate that the privilege can extend to the relaying of privileged legal advice between representatives of an organizational client who can act on that advice. *See* Rule 11-503(A)(1), (B)(4); *Henry*, \_\_\_-NMCA-\_\_\_, ¶ 33.

{20} This interpretation is supported by "the purpose of the privilege, which is to encourage the free flow of information between attorney and client." *Santa Fe Pac. Gold Corp.*, 2007-NMCA-133, ¶ 18; *see id.* ¶ 5 ("The purpose of the privilege . . . provides the guiding principle in determining whether a communication is protected." (citation omitted)). Protecting such derivative communications in an organizational context encourages the free flow of privileged legal advice to those representatives of the organizational client in a position to act on it.

{21} Based on the foregoing, we conclude that a communication relaying privileged legal advice between representatives of an organizational client who can act on that advice qualifies as being "made for the purpose of facilitating or providing professional legal services to that client." Rule 11-503(B); *see Henry*, \_\_\_-NMCA-\_\_\_, ¶¶ 15, 33. We now consider whether the January 25 and April 25 emails meet this standard.

{22} As discussed, these emails summarize privileged conversations containing legal advice related to pending litigation against the County and relay this privileged advice between representatives of the County. And we are satisfied that, under the circumstances of this case, the representatives of the County included on these emails—the Public Information Officer, the County Manager, and the Chairman—were in positions to act on the legal advice summarized in these communications relating to a pending lawsuit against the County. We therefore conclude that the January 25 and April 25 emails were "made for the purpose of facilitating or providing professional legal services to that client." Rule 11-503(B). Moreover, considering that the Public Information Officer relayed these emails only to representatives of the County in positions to act on the privileged advice summarized therein, and in light of Plaintiff's failure to develop an argument addressing whether the January 25 and April 25 emails were "made in confidence," *see Santa Fe Pac. Gold Corp.*, 2007-NMCA-133, ¶ 14, we likewise conclude these communications

11

were "confidential." *See* Rule 11-503(A)(4) (providing that "a communication is 'confidential' if made privately and not intended for further disclosure *except to other persons in furtherance of the purpose of the communication*" (emphasis added)); *see also Corona v. Corona*, 2014-NMCA-071, ¶ 26, 329 P.3d 701 ("The appellate court presumes that the district court is correct, and the burden is on the appellant to clearly demonstrate that the district court erred.").

**{23}** To the extent the January 25 and April 25 emails also contain discussions and concerns about the privileged legal advice summarized therein, this material does not alter our conclusion that the emails were made for the purpose of facilitating or providing professional legal advice to the County. To begin, our review indicates that it would be difficult to reveal this material without also revealing the substance of the privileged legal advice summarized in these emails. Moreover, "[t]he purpose of the privilege, to encourage full and frank communication between a client and its attorney," *Santa Fe Pac. Gold Corp*, 2007-NMCA-133, ¶ 25, is served by protecting the discussion of privileged legal advice which accompanies the sharing of that advice. Here, sharing privileged legal advice and concerns about that advice with the County Manager, the Chairman, and the Public Information Officer made available to the County leadership the information needed to engage in full and frank discussion about that advice with attorneys for the County.

**{24}** In sum, attorney-client privilege exempts the January 25 and April 25 emails from inspection under IPRA. Because attorney-client privilege exempts the April 25 email from inspection, we need not reach Plaintiff's argument that the district court erred in exempting this email from inspection on the additional ground that it falls within IPRA's exception for "letters or memoranda that are matters of opinion in personnel files." Section 14-2-1(C); *see Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022, ¶ 36, 137 N.M. 26, 106 P.3d 1273 ("A reviewing court generally does not decide academic or moot questions.").

**CONCLUSION**

**{25}** We reverse the district court's determination that attorney-client privilege exempts the January 7 email from inspection under IPRA, and remand this matter for further proceedings consistent with this opinion. We affirm the district court's determination that the privilege exempts the January 25 and April 25 emails from inspection.

**{26}** **IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge,**
**retired, sitting by designation.**

13

**WE CONCUR:**

_____
**JACQUELINE R. MEDINA, Judge**

_____
**ZACHARY A. IVES, Judge**

14